ORAL ARGUMENT NOT YET SCHEDULED
No. 23-3228

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

                *Appellee*,

v.

DONALD J. TRUMP,

                *Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Columbia

## PRESIDENT TRUMP'S OPPOSITION TO MOTION FOR EXPEDITED APPELLATE REVIEW

LAURO & SINGER
John F. Lauro
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
jlauro@laurosinger.com

BLANCHE LAW
Todd Blanche
Emil Bove
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250
toddblanche@blanchelaw.com

JAMES OTIS LAW GROUP, LLC
D. John Sauer
William O. Scharf
Michael E. Talent
13321 N. Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(314) 562-0031
John.Sauer@james-otis.com

*Attorneys for President Donald J. Trump*

## **INTRODUCTION**

The prosecution has one goal in this case: To unlawfully attempt to try, convict, and sentence President Trump before an election in which he is likely to defeat President Biden. This represents a blatant attempt to interfere with the 2024 presidential election and to disenfranchise the tens of millions of voters who support President Trump's candidacy.

While pursuing this partisan goal, the prosecution waited over two years to bring this lawless case, and then sought an extraordinarily expedited trial calendar, demanding that jury selection begin in December 2023—notwithstanding nearly 13 million pages of discovery and a litany of important and unresolved legal issues. D.Ct. Doc. 23, at 2. In support, the prosecution made the same argument it makes now—that violating President Trump's due process rights would somehow "vindicate" the public's interest in a speedy trial. *Id*.

The prosecution was wrong then, and it is wrong now. This appeal presents novel, complex, and sensitive questions of profound importance. Whether a President of the United States may be criminally prosecuted for his *official acts* as President goes to the core of our system of separated powers and will stand among the most consequential questions ever decided by this Court. The manifest public interest lies in the Court's careful and deliberate consideration of these momentous issues with the utmost care and diligence.

1

Likewise, the public's interest lies in ensuring that President Trump, like all citizens, has a full and fair opportunity to develop and present his arguments to this Court. A rushed schedule, as the prosecution demands, would vitiate these constitutional rights and irreparably undermine public confidence in the judicial system. The Court should deny the prosecution's motion to expedite.

## ARGUMENT

"The Court grants expedited consideration very rarely." D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 34 (2021). To justify expedited review, "[t]he movant must demonstrate that the delay will cause irreparable injury and that the decision under review is subject to substantial challenge." *Id.* "The Court also may expedite cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition. The reasons must be strongly compelling." *Id.* Here, every relevant consideration calls for this appeal to proceed on a measured, deliberate schedule—not the reckless rush to judgment advocated by the prosecution.

I. **The Prosecution Makes No Showing of Irreparable Injury or Any Other "Strongly Compelling" Justification for Expedited Review.**

The prosecution does not, and cannot, argue that it faces "irreparable injury" from the ordinary appellate process, and it does not purport to identify any "strongly compelling" justification for expedited review. *See id.*; Mot. To Expedite ("Mot."), at 2-6. Indeed, the prosecution does not even cite the governing standard. *See id.*

2

This Court typically treats the absence of a showing of irreparable injury as fatal to a motion to expedite. *See, e.g., Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *12 (D.C. Cir. May 25, 2023) (denying expedited review because the appellant "has not shown that the established appellate process will cause 'irreparable injury' or that the district court's dismissal for lack of subject matter jurisdiction 'is subject to substantial challenge'"); *Northpoint Technology, Ltd. v. FCC*, 2002 WL 31011256, at *1 (D.C. Cir. Aug. 29, 2002) ("Northpoint Technology, Ltd. has failed to demonstrate that delay will cause irreparable injury and that the decision under review is subject to substantial challenge."); *Sierra Club v. EPA*, 2003 WL 22389404, at *1 (D.C. Cir. Oct. 8, 2003) (denying expedited review because "Petitioner has not demonstrated that it will be irreparably harmed absent a stay or expedition."). It should do so again here.

The prosecution cites the expedited appeal of the Gag Order in this case in *United States v. Trump*, No. 23-3190 (D.C. Cir. 2023). Mot. 4. However, that appeal concerns a prior restraint that imposes an ongoing restriction on President Trump's core political speech, in violation of the First Amendment. Expedited consideration was warranted because delay would cause irreparable injury—the textbook justification for expedition. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also United States v. Trump*, No. 23-3190, --

3

F.4th --, 2023 WL 8517991, at *5 (D.C. Cir. Dec. 8, 2023) ("[R]eviewing such orders after final judgment would not redress or undo any unconstitutional prohibitions of speech that occurred prior to or during trial. The damage to First Amendment interests would be done."). The prosecution makes no similar showing of irreparable injury here.

On the contrary, the prosecution's sole contention of urgency is its desire to maintain the unconstitutional trial date of March 4, 2024. Mot. 2. Specifically, the prosecution contends that "[t]he public has a strong interest in this case proceeding to trial in a timely manner," *id.*, and that the supposed "imperative public interest in a timely trial" entails that this interlocutory appeal must be resolved "before the March 4, 2024 trial date," *id.* But the prosecution does not explain why it is "imperative" that the trial begin on that date or describe what irreparable injury will occur if it does not. The date of March 4, 2024, has no talismanic significance. Aside from the prosecution's unlawful partisan motives, there is no compelling reason that date must be maintained, especially at the expense of President Trump and the public's overriding interest in ensuring these matters of extraordinary constitutional significance are decided appropriately, with full and thoughtful consideration to all relevant authorities and arguments. *Id.*

The prosecution cites two cases that do not involve claims of immunity, which do nothing to alter this analysis. *See* Mot. 2-3 (citing *Strunk v. United States*, 412

4

U.S. 434, 439 n.2 (1973); and *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)). *Strunk* merely stated that the "public interest in a broad sense" favors the "prompt disposition of criminal charges," 412 U.S. at 439 n.2. *Strunk* did not therefore conclude that *all* interlocutory appeals in criminal cases must be expedited. *Cobbledick* emphasized the importance of prompt resolution of criminal cases in the context of holding that there was no interlocutory appeal from a denial of a motion to quash a grand jury subpoena *duces tecum*. 309 U.S. at 324. That logic is inapplicable here, where the prosecution has conceded that an interlocutory appeal is available. D.Ct. Doc. 182, at 1-2.

"Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). "A mere assertion of delay does not constitute substantial harm. Some delay would be occasioned by almost all interlocutory appeals." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), *overruled in different part by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). The delay occasioned by this Court's ordinary briefing schedule in this "case[] of extraordinary public moment" is "not immoderate," *Landis*, 299 U.S. at 256, and the prosecution's "mere assertion of delay does not constitute substantial harm," *Philip Morris*, 314 F.3d at 622.

5

## II. Expedited Consideration Would Violate President Trump's Due Process and Sixth Amendment Rights.

In fact, the public interest weighs strongly against the request for expedited review, because expedited consideration would violate President Trump's due process and Sixth Amendment rights, among others.

From the outset, the prosecution and the district court have repeatedly infringed on President Trump's due process rights by denying him adequate time to prepare for a potential trial and by forcing him to comply with unreasonably rapid deadlines. The initial discovery production in this matter included over 11.5 million pages of discovery, which is the equivalent to "the Washington Monument, stacked on top of itself eight times, with nearly a million pages to spare." D.Ct. Doc. 30, at 6.

Despite the enormous volume of discovery—and despite taking nearly three years to perform its own investigation before bringing charges—the prosecution demanded an immediate trial, beginning just four months after its initial discovery production. D.Ct. Doc. 23, at 2. President Trump emphasized that it would be impossible to review such a vast quantity of material in the time demanded by the government. D.Ct. Doc. 30, at 9. Likewise, President Trump explained, *inter alia*, that: (1) the unprecedented and complex nature of the charges would present "numerous questions of first impression, requiring significant time for the parties to consider and brief, and for the Court to resolve," *id*. at 11; (2) "[t]here are hundreds

6

of potentially relevant witnesses spread across the country," *id*. at 10; and (3) the prosecution's proposal conflicted with existing deadlines in other coordinated proceedings seeking to derail President Trump's candidacy, *id*. at 14.

Nonetheless, the district court, over President Trump's strenuous due process and Sixth Amendment objections, imposed a trial date of March 4, 2024. D.Ct. Doc. 38, at 57 ([defense counsel] "I feel I need to put that on the record so there's no doubt that in our judgment that trial date is inconsistent with President Trump's right to due process and his right to effective assistance of counsel under the Sixth Amendment."). It did so despite acknowledging that the median time from case commencement to termination in 18 U.S.C. § 371 cases—nearly all of which are less complicated than this case—is approximately 26 months. *Id*. at 8-9.

In the time since, these due process and Sixth Amendment violations have only grown more pronounced. In twelve additional productions, including one just days ago, the prosecution has produced over a million additional pages of discovery, now totaling nearly 13 million pages, and thousands of hours of audio-visual content. D.Ct. Doc. 157, at 6. Similarly, at the August 28 conference, the prosecution inaccurately estimated that it would produce "225, 250 pages total" of classified

discovery. D.Ct. Doc. 38, at 44. It has since produced almost 1,000 pages of classified material.[1]

Nonetheless, the district court has repeatedly denied President Trump's reasonable requests for extensions of time, *see* D.Ct. Docs. 82, 146, and declared on October 16, 2023, that "we're not revisiting the trial date," Doc. 103 at 21—all in violation of President Trump's constitutional rights.

Now, the prosecution asks the Court to compound these due process violations by expediting this critically important appeal in hopes of maintaining the unconstitutional trial date imposed by the court below. The Court should decline this invitation. President Trump, like every other defendant, has a right to fully develop and present his arguments on appeal through the regular appellate process, and that right may not be set aside absent compelling justification. A rushed proceeding in service of partisan political aims presents no such justification.

The prosecution also ignores the harm that expedited consideration would inflict on the public's First Amendment rights. President Trump has a dominating lead for the Republican nomination for President, and he is the leading opponent of

---

[1] One of the prosecutors speculated—also inaccurately—"based on my knowledge and information, I don't think [the defendant] will" seek to use classified information at the trial. D.Ct. Doc. 38, at 44-45. President Trump has since filed two notices pursuant to CIPA § 5, in which he notified the court and the prosecution that he intends to disclose classified information at trial in support of this defense.

8

President Biden in the upcoming general election. The March 4, 2024 trial date is scheduled for the day before Super Tuesday, one of the most critical dates on the Republican primary calendar. The potential trial is likely to last for months, and it will thus inevitably interfere with the ability of American voters to hear from the leading Presidential candidate at the height of the campaign, in derogation of their First Amendment right to receive his speech. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748, 756 (1976). The First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971). For this reason as well, the public interest weighs heavily against expedited consideration here.

### III. This Appeal Raises Novel Questions of Exceptional Sensitivity and Importance That Warrant Careful and Deliberate Consideration.

In the history of the United States, no President has ever been subject to criminal prosecution for the exercise of official responsibilities—until now. The question whether a President is immune from criminal prosecution for his official duties is a novel question of exceptional sensitivity and importance—one that warrants careful and deliberate treatment, not a hyper-accelerated briefing schedule and rush to judgment driven by partisan concerns.

American history abounds with examples of Presidents who were accused by their political opponents of "criminal" activity in their official acts, going back to

9

the dawn of the Republic. Could President George W. Bush face criminal charges of defrauding the United States and obstructing official proceedings for allegedly giving Congress false information about weapons of mass destruction in Iraq, to induce war on false premises?[2] Could President Obama be charged with murder for allegedly authorizing the drone strike that killed Anwar Al-Awlaki and his sixteen-year-old son, both U.S. citizens?[3] Could President Nixon have been prosecuted for obstruction of justice for ordering the dismissal of Archibald Cox in the "Saturday Night Massacre"?[4] Could President John Quincy Adams have been indicted and imprisoned for the "corrupt bargain" of appointing Henry Clay as his Secretary of State?[5] According to President Trump, the answer to these questions is "No," an answer that is deeply rooted in the doctrine of separated powers—but the prosecution

---

[2] *See, e.g.,* Gary L. Gregg II, *George W. Bush: Foreign Affairs*, UVA Miller Center, at https://millercenter.org/president/gwbush/foreign-affairs

[3] *See, e.g.,* Spencer Ackerman, *US Cited Controversial Law in Decision to Kill American Citizen by Drone*, THE GUARDIAN (June 23, 2014), at https://www.theguardian.com/world/2014/jun/23/us-justification-drone-killing-american-citizen-awlaki.

[4] Carroll Kilpatrick, *Nixon Forces Firing of Cox; Richardson, Ruckelshaus Quit*, WASHINGTON POST (Oct. 21, 1973), at https://www.washingtonpost.com/wp-srv/national/longterm/watergate/articles/102173-2.htm.

[5] *See, e.g.,* Jessie Kratz, *The 1824 Presidential Election and the "Corrupt Bargain"*, National Archives (Oct. 22, 2020), *at* https://prologue.blogs.archives.gov/2020/10/22/the-1824-presidential-election-and-the-corrupt-bargain/.

disagrees. These are questions of historic sensitivity and importance. They warrant the most careful consideration possible, not the breakneck speed demanded by the prosecution.

Indeed, the prosecution's push for haste has already hampered thoughtful consideration of these issues. In the court below, the prosecution insisted on a highly expedited resolution of the Presidential immunity question by the trial court, *see* D.Ct. Doc. 142, at 1, and the district court obliged by ruling within nine days of the close of briefing on the relevant motions. *See* D.Ct. Doc. 162 (reply brief on constitutional issues, filed Nov. 22, 2023); D.Ct. Docs. 171, 172 (opinion and decision issued Dec. 1, 2023). The result was a hasty consideration of the issues that overlooked significant authorities and made a series of fundamental errors.

To take just one example, the first argument in the district court's analysis contradicts binding Supreme Court precedent. The district court reasoned that the absence of an express provision in the Constitution granting the President official immunity implies that no such immunity exists. D.Ct. Doc. 172, at 6-8. "There is no 'Presidential Immunity' Clause," the district court reasoned, and "[t]he lack of constitutional text is no accident." *Id.* at 7. But this reasoning would entail that the President has no immunity from *civil* suit as well—a position the Supreme Court has long rejected. *Nixon v. Fitzgerald*, 457 U.S. 731, 747-49 (1982) (recognizing absolute Presidential immunity from civil suit). In *Fitzgerald*, the Supreme Court

11

explicitly rejected the argument that the absence of an express "immunity clause" in the Constitution implies the absence of Presidential immunity. *See id.* at 747 (holding that "in the absence of explicit constitutional or congressional guidance, our immunity decisions have been informed by the common law"); *id.* at 748 (holding that the "inquiry" into Presidential immunity "involves policies and principles that may be considered implicit in the nature of the President's office in a system structured to achieve effective government under a constitutionally mandated separation of powers"); *id.* at 749 (holding that Presidential "immunity [is] a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history").

Moreover, because members of Congress are the only officials whose immunity is expressly spelled out in the Constitution, the district court's logic would entail that other well-established immunity doctrines for executive officials, state officials, police, prosecutors, and judges—all of whom enjoy versions of immunity not expressly provided in the Constitution—should be held erroneous and void. *But see id.* at 751-52 (holding that, for "prosecutors and judges … absolute immunity now is established").

Similar errors afflict the district court's historical, structural, and textual analyses. Such errors provide a cautionary note about the importance of careful consideration of these complex and historic issues. "'Haste makes waste' is an old

12

adage. It has survived because it is right so often." *Kusay v. United States*, 62 F.3d 192, 195 (7th Cir. 1995).

**IV.　If the Court Grants Expedited Consideration, It Should Not Adopt the Prosecution's Proposed Schedule.**

Even if the Court grants expedited consideration—which it should not do—it should not adopt the prosecution's proposed schedule, which is facially unreasonable. The prosecution "requests that the Court require the defendant's opening brief be due no later than ten days from the entry of a briefing order," Mot. 5-6—which, assuming the Court rules promptly on the motion to expedite after the close of briefing, would make President Trump's opening brief due the day after Christmas. This proposed schedule would require attorneys and support staff to work round-the-clock through the holidays, inevitably disrupting family and travel plans. It is as if the Special Counsel "growled, with his Grinch fingers nervously drumming, 'I must find some way to keep Christmas from coming. … But how?'" DR. SEUSS, HOW THE GRINCH STOLE CHRISTMAS (Random House 1957).

Even if the Court grants the motion to expedite—which it should not—any such acceleration should be more measured, and allow, at minimum, twenty days from the scheduling order until the filing of President Trump's opening brief— especially in light of the impending holidays. Likewise, the Special Counsel's proposal of a three-day window to file the reply brief, Mot. 6, is wholly unreasonable. The Court should grant no less than fourteen days for a proper reply

13

brief and 21 days to prepare for oral argument on these momentous issues, even if it expedites the appeal. Anything less would result in a heedless rush to judgment on some of the most sensitive and important issues that this Court may ever decide.

## CONCLUSION

The Court should deny the prosecution's motion to expedite and, consistent with ordinary appellate procedure, provide President Trump 40 days to serve and file his initial brief after the record is filed, Fed. R. App. P. 31(a)(1), 21 days to file a reply brief, and 45 days to prepare for oral argument, D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 36-37 (2021) ("Typically, the final brief will be due at least 45 days before the argument date.").

| Dated: December 13, 2023 | Respectfully Submitted, |
|---|---|
| LAURO & SINGER | JAMES OTIS LAW GROUP, LLC |
| John F. Lauro<br>400 N. Tampa St., 15th Floor<br>Tampa, FL 33602<br>(813) 222-8990<br>jlauro@laurosinger.com | */s/ D. John Sauer*<br>D. John Sauer<br>William O. Scharf<br>Michael E. Talent<br>13321 N. Outer Forty Road, Suite 300<br>St. Louis, Missouri 63017<br>(314) 562-0031<br>John.Sauer@james-otis.com |
| BLANCHE LAW | |
| Todd Blanche<br>Emil Bove<br>99 Wall St., Suite 4460<br>New York, NY 10005<br>(212) 716-1250<br>toddblanche@blanchelaw.com | *Attorneys for President Donald J. Trump* |

## CERTIFICATE OF SERVICE

I hereby certify that, on December 13, 2023, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,049 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f), according to Microsoft Word.

This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Times New Roman font.

*/s/ D. John Sauer*
D. John Sauer