**SCHEDULED FOR ORAL ARGUMENT JANUARY 9, 2024**

No. 23-3228

_____

# In the United States Court of Appeals for the District of Columbia Circuit

_____

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

DONALD J. TRUMP,

*Appellant.*

_____

On Appeal from the U.S. District Court for the District of Columbia
Case No. 23-cr-257 (Hon. Tanya S. Chutkan)

_____

**BRIEF OF *AMICUS CURIAE* AMERICAN OVERSIGHT
IN SUPPORT OF DISMISSAL FOR LACK OF JURISDICTION**

_____

Lisa Cordara
Arnold & Porter
  Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
lisa.cordara@arnoldporter.com

R. Stanton Jones
Andrew T. Tutt
Daniel Yablon*
Arnold & Porter
  Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
stanton.jones@arnoldporter.com

*Admitted only in California;
practicing law in the District of
Columbia under the supervision of
lawyers in the firm who are
members in good standing of the
D.C. Bar.*

*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND
## RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

**A. Parties and Amici.**  Except for the *amicus* filing this brief, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Brief for Appellant and Appellee.

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), *amicus curiae* American Oversight states that it has no parent corporation, and no publicly held company has a 10% or greater ownership interest in it.

**B. Ruling Under Review.**  An accurate reference to the ruling at issue appears in the Brief for Appellant.

**C. Related Cases.**  The following case is related within the meaning of D.C. Circuit Rule 28(a)(1)(C):

- *United States v. Trump*, No. 23-3190, 2023 WL 8517991 (D.C. Cir. Dec. 8, 2023)

*/s/ R. Stanton Jones*
R. Stanton Jones

## DISCLOSURE STATEMENT PURSUANT TO
## CIRCUIT RULE 26.1

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 29(b), undersigned counsel certifies:

*Amicus curiae* American Oversight has no parent company, and no publicly held company has a 10% or greater ownership interest in it.

*/s/ R. Stanton Jones*
R. Stanton Jones

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

Counsel for the United States stated that the United States does not oppose the filing of this *amicus* brief.  Counsel for Mr. Trump did not respond to *amicus*'s request for consent.

Pursuant to D.C. Circuit Rule 29(d), *amicus* certifies that a separate brief is necessary to provide the unique perspective that, under a straightforward application of controlling Supreme Court and Circuit precedent, this Court lacks jurisdiction over this interlocutory appeal.

Because *amicus* is not aware of any other *amicus* brief addressing these issues, it certifies pursuant to D.C. Circuit Rule 29(d) that joinder in a single brief with other *amici* would be impracticable.

*/s/ R. Stanton Jones*
R. Stanton Jones

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS

No counsel for any party authored this brief in whole or in part and

no entity or person, aside from the *amicus*, its members, or its counsel,

made any monetary contribution intended to fund the preparation or

submission of this brief.

*/s/ R. Stanton Jones*
R. Stanton Jones

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1) ......................................ii

DISCLOSURE STATEMENT PURSUANT TO CIRCUIT RULE 26.1 ..iii

STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING ......................................................................iv

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ............................................................. v

TABLE OF CONTENTS ...................................................... vi

TABLE OF AUTHORITIES ................................................vii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................ 1

STATUTES AND REGULATIONS ........................................... 3

ARGUMENT ..................................................................... 4

I.    The Court lacks appellate jurisdiction. ........................................... 4

    A.    An order denying criminal immunity is not immediately appealable unless the claimed immunity rests upon an explicit textual guarantee against trial. ................................... 5

    B.    Mr. Trump's arguments rest upon structural constitutional principles and negative implication, not upon any explicit textual guarantee against trial. ............................................. 14

CONCLUSION ................................................................ 20

CERTIFICATE OF COMPLIANCE ....................................... 21

CERTIFICATE OF SERVICE.............................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Abney v. United States,*
    431 U.S. 651 (1977) ................................................................... 18, 19

*In re Al-Nashiri,*
    835 F.3d 110 (D.C. Cir. 2016) ................................................... 11, 14

*Am. Hosp. Ass'n v. Azar,*
    964 F.3d 1230 (D.C. Cir. 2020) .......................................................... 20

*Cobbledick v. United States,*
    309 U.S. 323 (1940) ...................................................................... 5, 6-7

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .............................................................................. 6

*United States v. Crosby,*
    20 F.3d 480 (D.C. Cir. 1994) ............................................................. 11

*Di Bella v. United States,*
    369 U.S. 121 (1962) ............................................................................ 19

*Flanagan v. United States,*
    465 U.S. 259 (1984) ........................................................................ 6, 7

*Midland Asphalt Corp. v. United States,*
    489 U.S. 794 (1989) .............................. 3, 4, 5, 6, 7, 8, 10, 11, 13, 15, 17

*R.R. Donnelley & Sons Co. v. F.T.C.,*
    931 F.2d 430 (7th Cir. 1991) ............................................................. 13

*In re Sealed Case,*
    144 F.3d 74 (D.C. Cir. 1998) ............................................................. 11

*Sell v. United States,*
    539 U.S. 166 (2003) ........................................................................ 7, 8

*Stack v. Boyle,*
    342 U.S. 1 (1951) ........................................................................... 7, 8

*United States v. Cisneros,*
169 F.3d 763 (D.C. Cir. 1999) ................................................. 4, 7, 10, 16

*United States v. Fokker Services B.V.,*
818 F.3d 733 (D.C. Cir. 2016) ........................................................ 6, 11

*United States v. Hollywood Motor Car Co.,*
458 U.S. 263 (1982) ........................................................................ 6

*United States v. Joseph,*
26 F.4th 528 (1st Cir. 2022) ................................................. 4, 9, 11, 12

*United States v. Lemire,*
720 F.2d 1327 (D.C. Cir. 1983) ........................................................ 16

*United States v. Macchia,*
41 F.3d 35 (2d Cir. 1994) .................................................. 4, 9, 12, 13, 17

*United States v. MacDonald,*
435 U.S. 850 (1978) ........................................................................ 8, 9

*United States v. Poindexter,*
859 F.2d 216 (D.C. Cir. 1988) ........................................................ 6

*United States v. Quaintance,*
523 F.3d 1144 (10th Cir. 2008) ........................................................ 13

*United States v. Rose,*
28 F.3d 181 (D.C. Cir. 1994) ............................................................ 10

*United States v. Schock,*
891 F.3d 334 (7th Cir. 2018) ............................................................ 15

*United States v. Shalhoub,*
855 F.3d 1255 (11th Cir. 2017) ........................................................ 14

*United States v. Trump,*
No. 23-cr-257, 2023 WL 8359833 (D.D.C. Dec. 1, 2023) ..................... 15

*United States v. Tucker,*
745 F.3d 1054 (10th Cir. 2014) ........................................................ 14

*United States v. Wampler,*
   624 F.3d 1330 (10th Cir. 2010) ...................................................... 9, 16

*United States v. Williamson,*
   903 F.3d 124 (D.C. Cir. 2018) ............................................................ 16

## Constitutional Provisions

U.S. Const. art. I, § 3, cl. 7 ........................................................................ 17

## Statutes

28 U.S.C. § 1291 .................................................................................... 3, 5

## Rules

Fed. R. App. P. 29(a)(4) ............................................................................... 1

Fed. R. Crim. P. 30 ..................................................................................... 16

## Other Authorities

*A Timeline of the Government's Response on Jan. 6, 2021,*
   American Oversight,
   https://www.americanoversight.org/timeline-jan6 ............................... 2

*The 'Alternate Electors' Plot to Overturn the 2020 Election,*
   American Oversight (May 20, 2022),
   https://www.americanoversight.org/investigation/the-
   alternate-electors-plot-to-overturn-the-2020-election ......................... 2

*American Oversight Obtains Seven Phony Certificates of Pro-
   Trump Electors,* American Oversight, Mar. 2, 2021,
   https://www.americanoversight.org/american-oversight-
   obtains-seven-phony-certificates-of-pro-trump-electors ..................... 2

*Fake Electors' Continued Involvement in Anti-Democratic
   and Election Denial Efforts,* American Oversight, Dec. 21,
   2022, https://www.americanoversight.org/fake-electors-
   continued-involvement-in-anti-democratic-and-election-
   denial-efforts ...................................................................................... 3

ix

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* American Oversight is a nonpartisan, nonprofit section 501(c)(3) organization committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials primarily by enforcing the public's right to government records. In furtherance of these goals, American Oversight seeks to ensure meaningful and timely accountability for public officials who attempt to abuse their power with impunity.

Founded in 2017, American Oversight has exposed grave threats to American democracy, including attempts to undermine free and fair elections. Much of American Oversight's work in this area has focused on efforts by former President Trump and his allies to overturn the results of the 2020 presidential election. For instance, American Oversight obtained copies of the forged electoral certificates from seven states that were submitted to the National Archives and Congress by

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel for a party, nor any person other than the *amicus curiae*, or their counsel, contributed money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4).

supporters of Mr. Trump who sought to replace the valid presidential electors from their states.[2]  Additional records obtained by American Oversight revealed details of a coordinated, multi-state effort to undermine the electoral vote process and effectively disenfranchise millions of voters,[3] which culminated in the January 6, 2021 violent attack on the U.S. Capitol.  American Oversight also obtained various records from the key federal agencies involved in the response to the events of January 6, producing a detailed timeline of the events of that day.[4]  Since then, American Oversight has uncovered details of the involvement of several fake electors in various states in their ongoing

---

[2] *American Oversight Obtains Seven Phony Certificates of Pro-Trump Electors*, American Oversight (Mar. 2, 2021), https://www.americanoversight.org/american-oversight-obtains-seven-phony-certificates-of-pro-trump-electors.

[3] *The 'Alternate Electors' Plot to Overturn the 2020 Election*, American Oversight (May 20, 2022), https://www.americanoversight.org/investigation/the-alternate-electors-plot-to-overturn-the-2020-election.

[4] *A Timeline of the Government's Response on Jan. 6, 2021*, American Oversight, https://www.americanoversight.org/timeline-jan6 (last visited Dec. 28, 2023).

efforts to promote election-denial conspiracy theories and undermine public confidence in elections.[5]

Consistent with its mission, American Oversight has a vested interest in ensuring that dilatory procedural tactics are not used to avoid accountability for efforts to subvert the U.S. Constitution and overturn the results of the 2020 presidential election. Accordingly, American Oversight submits this *amicus curiae* brief to explain that this Court lacks jurisdiction over this interlocutory appeal, and to urge the Court to dismiss the appeal and remand this case to the district court immediately for prompt trial and judgment without any further delay.

## STATUTES AND REGULATIONS

Section 1291 of title 28 provides in pertinent part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

---

[5] *Fake Electors' Continued Involvement in Anti-Democratic and Election Denial Efforts*, American Oversight (Dec. 21, 2022), https://www.americanoversight.org/fake-electors-continued-involvement-in-anti-democratic-and-election-denial-efforts.

# ARGUMENT

## I. The Court lacks appellate jurisdiction.

This Court should dismiss this appeal for lack of jurisdiction. Under controlling Supreme Court precedent, an interlocutory order denying immunity in a criminal case is not immediately appealable unless the claimed immunity "rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989). The Supreme Court has identified only two constitutional guarantees against trial that satisfy this demanding standard: the Double Jeopardy Clause and the Speech or Debate Clause. *Id.* Applying *Midland Asphalt*, this Court and other courts of appeals have long dismissed interlocutory appeals asserting claims of criminal immunity not based on an explicit textual guarantee against trial, including judicial immunity,[6] transactional immunity,[7] and immunity rooted in structural separation-of-powers principles.[8]

The arguments asserted by former President Trump here fail *Midland Asphalt*'s straightforward rule of appellate jurisdiction, and

---

[6] *United States v. Joseph*, 26 F.4th 528, 533 (1st Cir. 2022).

[7] *United States v. Macchia*, 41 F.3d 35, 38 (2d Cir. 1994).

[8] *United States v. Cisneros*, 169 F.3d 763, 767 (D.C. Cir. 1999).

obviously so.  On their face, Mr. Trump's arguments do not rest upon any explicit constitutional guarantee against trial.  Instead, he asserts immunity under structural constitutional principles and an unstated negative implication of the Impeachment Judgment Clause.  Because neither claim "rests upon an explicit . . . guarantee that trial will not occur," this Court lacks appellate jurisdiction.  The Court should dismiss this appeal immediately and remand for trial without further delay.

## A.   An order denying criminal immunity is not immediately appealable unless the claimed immunity rests upon an explicit textual guarantee against trial.

Appellate review before judgment is rare in the federal system.  The courts of appeals have appellate jurisdiction over "final decisions of the district courts."  28 U.S.C. § 1291.  "In criminal cases, this prohibits appellate review until after conviction and imposition of sentence." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989).  By limiting litigants to a single appeal at a case's end, Section 1291 implements a policy as old as the courts themselves: "forbidding piecemeal disposition" that "enfeebl[es] judicial administration" and allows "obstruction" of legal process.  *Cobbledick v. United States*, 309 U.S. 323, 325 (1940).

5

"In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), [the Supreme Court] carved out a narrow exception to the normal application of the final judgment rule, which has come to be known as the collateral order doctrine." *Midland Asphalt*, 489 U.S. at 798. "To fall within the limited class of final collateral orders, an order must (1) 'conclusively determine the disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be effectively unreviewable on appeal from a final judgment.'" *Id.* at 799 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)).

Already applied sparingly in civil cases, the Supreme Court "ha[s] interpreted the collateral order exception 'with the utmost strictness' in criminal cases." *Id.* (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). "The Supreme Court has long held that the policy of finality embodied in [Section 1291] is 'inimical to piecemeal appellate review' and that this policy is 'at its strongest' in the field of criminal law." *United States v. Poindexter*, 859 F.2d 216, 218 (D.C. Cir. 1988) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)). "[D]elay can be 'fatal to the vindication of the criminal law,'" *United States v. Fokker Services B.V.*, 818 F.3d 733, 748 (D.C. Cir. 2016) (quoting

*Cobbledick*, 309 U.S. at 324), because it "diminish[es] evidence," "prolongs public anxiety," and frustrates the community's "interest in swiftly bringing the person responsible to justice." *Flanagan*, 465 U.S. at 264-65. Accordingly, "[i]n criminal cases, 'the compelling interest in prompt trials' demands that courts apply the [collateral order] doctrine 'with utmost strictness' and confine its scope." *United States v. Cisneros*, 169 F.3d 763, 767 (D.C. Cir. 1999) (quoting *Flanagan*, 465 U.S. at 265).

In *Midland Asphalt*, the Supreme Court squarely held that an interlocutory denial of a criminal defendant's purported right to avoid trial is *not* immediately appealable unless the claimed right "rests upon an explicit statutory or constitutional guarantee that trial will not occur." 489 U.S. at 800-01. Writing for a unanimous Court, Justice Scalia noted that, despite "numerous opportunities in the 40 years since *Cohen* to consider the appealability of prejudgment orders in criminal cases," the Court had identified only two constitutional guarantees against trial sufficiently explicit to meet this demanding standard: the Double Jeopardy Clause and the Speech or Debate Clause.[9] *Id.* at 799.

---

[9] The Supreme Court has also recognized two types of criminal orders subject to interlocutory appeal under the collateral order doctrine that do not involve a claimed right not to be tried. *Stack v. Boyle*, 342 U.S. 1

Applying this "explicit guarantee" rule, the Court in *Midland Asphalt* had "little difficulty concluding that an order denying a motion to dismiss an indictment for an alleged violation of [Fed. R. Crim. Proc.] 6(e) does not satisfy [the] 'stringent conditions for qualification as an immediately appealable collateral order.'" *Id.* (quoting *Flanagan*, 465 U.S. at 270). Although grand jury secrecy is important, "[t]he text of Rule 6(e) contains no hint that a governmental violation of its prescriptions gives rise to a right not to stand trial." *Id.* at 802. And while the Fifth Amendment's Grand Jury Clause "confer[s] a right not to be tried (in the pertinent sense) when there is no grand jury indictment" and implies "the requisite secrecy of grand jury proceedings," the Clause contains no explicit guarantee against trial when grand jury secrecy has been violated. *Id.*

Notably, the Court in *Midland Asphalt* specifically addressed immunity claims and held that they are typically not subject to interlocutory appeal in criminal cases: even where "a defendant has been granted immunity from prosecution . . . this has not led the Court to

---

(1951) (orders denying motions to reduce bail); *Sell v. United States*, 539 U.S. 166, 175-77 (2003) (orders allowing involuntary medication to render a defendant competent to stand trial).

conclude that such defendants can pursue interlocutory appeals." *Id.* at 801 (quoting *United States v. MacDonald*, 435 U.S. 850, 860 n.7 (1978)).

*Midland Asphalt* has never been overruled, and courts of appeals have read it to mean exactly what it says. Interlocutory appeals in criminal cases are limited to "those 'rights not to be tried' that are *explicitly* set forth in a statute or the Constitution." *United States v. Joseph*, 26 F.4th 528, 533 (1st Cir. 2022) (emphasis added). "The test is not whether the right alleged to be impaired is grounded in the Constitution"; "[t]he test is whether the pertinent protection, constitutional or statutory, *explicitly* guarantees a right not to be tried." *United States v. Macchia*, 41 F.3d 35, 38 (2d Cir. 1994) (emphasis added). In other words, "only when a statutory or constitutional provision *itself* contains a *guarantee* that a trial will not occur—may courts of appeals intervene prior to a final judgment to review the defendant's claimed 'right not to be tried.'" *United States v. Wampler*, 624 F.3d 1330, 1336 (10th Cir. 2010) (Gorsuch, J.) (emphasis in original). "And, of course, most statutory and constitutional provisions—including the Sixth and Fourth Amendments—contain no such guarantee against trial even while they surely protect other important interests." *Id.*

9

Applying *Midland Asphalt*'s straightforward rule, this Court has dismissed interlocutory appeals where the claimed immunity or other right not to be tried did not rest upon any explicit textual guarantee. For instance, in *Cisneros*, the Court dismissed a former cabinet secretary's interlocutory appeal claiming that "he [wa]s immune from prosecution on structural separation of powers grounds." 169 F.3d at 769. While "any criminal defendant . . . may raise separation of powers as a defense," "it scarcely follows that whenever a defendant relies on the separation-of-powers doctrine, the defendant's right must be treated as if it rested on an 'explicit . . . guarantee that trial will not occur.'" *Id.* (quoting *Midland Asphalt*, 489 U.S. at 801). "Most separation-of-powers claims are clearly not in that category" and thus are ineligible for interlocutory appeal in criminal cases.[10] *Id.*

---

[10] The Court explained that it had permitted interlocutory review of separation-of-powers claims only where legislators asserted a right "closely akin to a claim of Speech or Debate Clause immunity." *Id.* at 770. The first of those cases—on which the other two relied—was a "civil action," not a criminal prosecution at all. *United States v. Rose*, 28 F.3d 181, 182 (D.C. Cir. 1994). Regardless, as in *Cisneros*, Mr. Trump, who never served in Congress, "obviously cannot rely on the analogy to [the] Speech or Debate Clause . . . found persuasive in *Rose*." 169 F.3d at 770.

Likewise, in *Fokker*, this Court held that the denial of an asserted right not to be tried conferred by a deferred prosecution agreement was not immediately appealable because the defendant's "purported right to avoid trial [did] not 'rest[ ] upon an explicit statutory or constitutional guarantee that trial will not occur.'" 818 F.3d at 748 (quoting *Midland Asphalt*, 489 U.S. at 800-01); *see also In re Sealed Case*, 144 F.3d 74, 75 (D.C. Cir. 1998) (per curiam) (dismissing under *Midland Asphalt* an appeal asserting transactional immunity); *In re Al-Nashiri*, 835 F.3d 110, 131-32 (D.C. Cir. 2016) (holding that statutory language did not contain explicit guarantee against trial within meaning of *Midland Asphalt*); *United States v. Crosby*, 20 F.3d 480, 487 (D.C. Cir. 1994) (Henderson, J.) (dismissing under *Midland Asphalt* defendant's interlocutory appeal asserting his prosecution was barred by prior plea agreements).

Other circuits are in accord. In *Joseph*, the First Circuit dismissed for lack of jurisdiction a judge's interlocutory appeal from the denial of her claim to judicial immunity. 26 F.4th at 534. Under *Midland Asphalt*'s "rule of construction applicable when a criminal defendant asserts a right not to stand trial," "judicial immunity — even assuming that it applies in this criminal case — does not provide a right not to be

tried that can serve as a basis for interlocutory review." *Id.* at 533. "*Midland Asphalt* teaches that such a right must 'rest[ ] upon an explicit statutory or constitutional guarantee that trial will not occur—as in the Double Jeopardy Clause . . . or the Speech or Debate Clause . . . ." *Id.* (quoting *Midland Asphalt*, 489 U.S. at 801).  "In adopting this rule for interlocutory appeals in criminal cases, the [Supreme] Court recognized that, absent such a strict construction, very many legal defenses might be said to confer a right not to be tried." *Id.*  "So by limiting interlocutory appeals to those 'rights not to be tried' that are explicitly set forth in a statute or the Constitution, the [Supreme] Court avoided construing an exception in a manner that swallowed the rule." *Id.*  In holding that appellate review of the claimed judicial immunity must await conviction and sentence, the First Circuit refused to "overlook *Midland Asphalt*'s pronouncement that a right not to be tried must be *explicitly* rooted in a statute or the Constitution." *Id.* (emphasis added).

In *Macchia*, the Second Circuit dismissed a criminal defendant's interlocutory appeal asserting immunity based on his agreement with prosecutors.  41 F.3d at 37-39.  The Second Circuit recognized that *Midland Asphalt* had abrogated its prior decisions allowing such

12

interlocutory appeals.  *Id.* at 37-38.  The defendant identified no "statute explicitly insulating from prosecution a witness given transactional immunity," but rather relied on "an alleged agreement with the United States Attorney, the breach of which, he contend[ed], violate[d] the Due Process Clause."  *Id.* at 38.  This failed *Midland Asphalt*: "There can be virtually no doubt that a violation of the general prohibition of the Due Process Clause is not a violation of an 'explicit statutory or constitutional guarantee that trial will not occur,' as that phrase is used in *Midland Asphalt*."  *Id.*  The defendant's argument that his immunity was rooted in some constitutional provision "misses Justice Scalia's point"—namely, that the "right not to be tried" must be explicit in constitutional text.  *Id.*

Other circuits have taken the same simple lessons from *Midland Asphalt*.  They too recognize that "[t]here is a gulf between a right not to be tried and a right the vindication of which implies the end of the case" and that "[o]nly an 'explicit statutory or constitutional guarantee that trial will not occur' creates the sort of right not to be tried that supports immediate review."  *R.R. Donnelley & Sons Co. v. F.T.C.*, 931 F.2d 430, 433 (7th Cir. 1991) (Easterbrook, J.) (quoting *Midland Asphalt*, 489 U.S. at 801).  That a "right not to be tried" must rest "upon an explicit

13

statutory or constitutional guarantee that trial will not occur." *United States v. Quaintance*, 523 F.3d 1144, 1146 (10th Cir. 2008) (quoting *Midland Asphalt*, 489 U.S. at 801). That *Midland Asphalt* is "rarely satisfied" and thus "very few motions to dismiss an indictment—even if founded on a valid constitutional right—will give rise to interlocutory appellate jurisdiction." *United States v. Tucker*, 745 F.3d 1054, 1063 (10th Cir. 2014) (Matheson, J.). And that even when a defendant "asserts that the denial of his motion implicates a panoply of rights—due process, the presumption against extraterritorial application of American law, proper venue, and factual sufficiency in an indictment," interlocutory review remains unavailable so long as "none of them 'rest[ ] upon an explicit statutory or constitutional guarantee that trial will not occur.'" *United States v. Shalhoub*, 855 F.3d 1255, 1261 (11th Cir. 2017) (Pryor, J.) (quoting *Midland Asphalt*, 489 U.S. at 801).

### B.    Mr. Trump's arguments rest upon structural constitutional principles and negative implication, not upon any explicit textual guarantee against trial.

As this Court has explained, the "key question" under *Midland Asphalt* "is whether there is any express statutory or constitutional language that gives [a criminal defendant] a right not to be tried." *In re*

14

*Al-Nashiri*, 835 F.3d 110, 131 (D.C. Cir. 2016). If so, the defendant may immediately appeal; if not, appellate review must await conviction and sentence. The indisputable answer to that key question here is "no." Mr. Trump asserts immunity under structural constitutional principles and an unstated negative implication of the Impeachment Judgment Clause. Neither claim rests upon any explicit textual guarantee against trial.

*First*, Mr. Trump's presidential immunity claim does not rest on any explicit constitutional guarantee against trial. As the district court aptly observed, "[t]here is no Presidential Immunity Clause." *United States v. Trump*, No. 23-cr-257, 2023 WL 8359833, at *4 (D.D.C. Dec. 1, 2023). Mr. Trump does not argue otherwise. *See* Appellant Br. 5-7. Instead, he contends that "[s]even considerations"—including history, tradition, and separation-of-powers principles—"mandate the recognition of presidential immunity from prosecution for official acts." *Id.* at 5-7. Compelling as these factors may (or may not) be, they do not come close to meeting *Midland Asphalt*'s requirement of an explicit textual guarantee. Absent such an "explicit . . . guarantee that trial will not occur," controlling Supreme Court and Circuit precedent forecloses

15

appellate jurisdiction over immunity claims like Mr. Trump's until after he is convicted and sentenced. *Midland Asphalt*, 489 U.S. at 801.

The two other circuits to address the question have agreed that separation-of-powers claims typically flunk *Midland Asphalt*'s test. *See United States v. Schock*, 891 F.3d 334, 339 (7th Cir. 2018); *United States v. Wampler*, 624 F.3d 1330, 1337-39 (10th Cir. 2010). Writing for a unanimous Tenth Circuit panel, then-Judge Gorsuch explained why: "while the separation of powers inheres in the Constitution's structure and is surely an essential feature of our constitutional order, the constitutional document doesn't include a guarantee protecting those invoking separation of powers doctrine from trial." *Wampler*, 624 F.3d at 1339. Even important, structural constitutional claims in a criminal case must ordinarily await appeal following final judgment.

Restraint is particularly appropriate where, as here, the claimed immunity may "depend on the trial evidence and on the government's (and the defendant's) proposed [jury] instructions." *Cisneros*, 169 F.3d at 767-68 (citing Fed. R. Crim. P. 30); *see* Appellant Br. 41-46 (discussing five broad categories of alleged official acts). A criminal indictment generally need only "set forth the offense in the words of the statute

16

itself," and "proof at trial need not, indeed cannot, be a precise replica of the charges contained in the indictment." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (first quotation); *United States v. Lemire*, 720 F.2d 1327, 1344 (D.C. Cir. 1983) (second quotation). Regardless of how this Court were to define the outer perimeter of his official duties now, Mr. Trump could return, following conviction, to press his presidential immunity claim again for each overt act for which the government adduced evidence at trial. Efficient judicial administration would reserve these fact-intensive determinations for a single, post-judgment appeal. And controlling precedent does just that.

*Second*, Mr. Trump's Impeachment Judgment Clause argument also does not rest on any explicit constitutional guarantee against trial. On its face, the Impeachment Judgment Clause, U.S. Const. art. I, § 3, cl. 7, does not confer any explicit right not to be tried. Again, Mr. Trump does not argue otherwise. Instead, he claims that a "negative implication" from the Clause prohibits the prosecution of a federal officer whom the Senate has acquitted. Appellant Br. 8, 47. But a negative implication is no "explicit . . . guarantee." *Midland Asphalt*, 489 U.S. at 801. It is, by definition, an implication from what the Clause leaves

17

*unsaid* rather than what it actually says. Any argument that Mr. Trump can immediately appeal because his argument is grounded in a specific constitutional provision "misses Justice Scalia's point" in *Midland Asphalt*. *Macchia*, 41 F.3d at 38. Even claims with firm footing in constitutional text, like those alleging unfair delay or an unreasonable seizure, must wait for final judgment unless that text explicitly guarantees "a right not to be tried." *Midland Asphalt*, 489 U.S. at 801.

Mr. Trump's invocation of "double jeopardy principles" implied by the Impeachment Judgment Clause similarly fails *Midland Asphalt*. An order denying a defendant's claim under the Double Jeopardy Clause is appealable as a collateral order because that clause's text contains an "explicit . . . guarantee that trial will not occur." *Id.*; *see Abney v. United States*, 431 U.S. 651, 661 (1977). The Impeachment Judgment Clause contains no such guarantee. And Mr. Trump expressly disclaims reliance on the text of the Double Jeopardy Clause itself. Indeed, he faults the district court for performing "analysis of the Double Jeopardy Clause" rather than considering the distinct principles of preclusion that he contends govern his claim. Appellant Br. 54 n.7. Under *Midland*

18

*Asphalt*, these sorts of implied principles—however weighty—do not qualify for an interlocutory appeal in a criminal case.

*   *   *

To say that the issues presented in this appeal are unreviewable before final judgment is not to say that those issues are unimportant. Appellate review must wait even when it comes to the most fundamental rights protecting the most fundamental interests—the right to counsel; the right to an impartial jury; the right to due process of law. And for good reason. Trial error, and even trial error requiring an indictment's dismissal, is easy to claim. Criminal trials would never come to verdict—permitting defendants to escape accountability—if susceptible to the constant "delays and disruptions attendant upon intermediate appeal" of every alleged legal error. *Abney*, 431 U.S. at 657 (quoting *Di Bella v. United States*, 369 U.S. 121, 126 (1962)). The balance between the need for swift error correction and the need to permit criminal trials to proceed to a prompt and orderly conclusion has thus come out only one way for centuries: against allowing interlocutory review.

No one doubts that the asserted claims in this appeal are serious.

But under controlling precedent, they cannot be appealed now.[11]

## CONCLUSION

The Court should dismiss this appeal for lack of jurisdiction.


Dated: December 29, 2023                Respectfully submitted,

                                        */s/ R. Stanton Jones*

Lisa Cordara                            R. Stanton Jones
ARNOLD & PORTER                         Andrew T. Tutt
  KAYE SCHOLER LLP                      Daniel Yablon*
250 West 55th Street                    ARNOLD & PORTER
New York, NY 10019-9710                   KAYE SCHOLER LLP
(212) 836-8000                          601 Massachusetts Ave., NW
lisa.cordara@arnoldporter.com           Washington, DC 20001
                                        (202) 942-5000
                                        stanton.jones@arnoldporter.com

                                        *Admitted only in California;
                                        practicing law in the District of
                                        Columbia under the supervision of
                                        lawyers in the firm who are
                                        members in good standing of the
                                        D.C. Bar.

        *Counsel for Amicus Curiae*

---

[11] If the Court is concerned that limiting its discussion to appellate jurisdiction might impede prompt Supreme Court merits review, it can exercise hypothetical jurisdiction to address the merits while dismissing the appeal. *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1246 (D.C. Cir. 2020).

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3,849 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Cir. R. 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Century Schoolbook font using Microsoft Word.

*/s/ R. Stanton Jones*
R. Stanton Jones

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(d) and Cir. R. 25, that on December 29, 2023, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

*/s/ R. Stanton Jones*
R. Stanton Jones