ORAL ARGUMENT SCHEDULED FOR JANUARY 9, 2023

No. 23-3228

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

DONALD J. TRUMP,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-cr-00257
Before the Honorable Tanya S. Chutkan

**BRIEF OF FORMER GOVERNMENT OFFICIALS AND
CONSTITUTIONAL LAWYERS AS AMICI CURIAE IN SUPPORT OF
APPELLEE AND AFFIRMANCE**

FRED WERTHEIMER
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Avenue NW
Washington, DC 20036
(202) 355-9600

MATTHEW A. SELIGMAN
STRIS & MAHER LLP
777 S. Figueroa Street, Suite 3850
Los Angeles, CA 90017
(213) 995-6873

SETH P. WAXMAN
TODD C. ZUBLER
COLLEEN M. CAMPBELL
NATHANIEL W. REISINGER
DAVID M. LEVINE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

KYLE T. EDWARDS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1000

December 29, 2023

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae certify as follows:

**A.    Parties And Amici**

Except for the amici joining this brief and any other amici who had not yet entered an appearance in this case as of the filing of this brief, all parties, intervenors, and amici appearing before the district court and this Court are listed in appellant's brief.

**B.    Rulings Under Review**

References to the ruling at issue appear in appellant's brief.

**C.    Related Cases**

Related cases are listed in appellant's brief.

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amici curiae state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## D.C. CIRCUIT RULE 29(d) STATEMENT

Pursuant to D.C. Circuit Rule 29(d), amici curiae state that this separate brief is necessary to provide amici's unique perspective on the significance of this appeal for effective enforcement of the criminal laws of the United States.  Given the expedited nature of this appeal, amici submitting this brief are unable to file a single brief with amici who have previously filed briefs or with other unidentified potential amici.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ........................................................................................i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

D.C. CIRCUIT RULE 29(d) STATEMENT ........................................ iii

TABLE OF AUTHORITIES ...................................................... v

INTEREST OF AMICI CURIAE ...................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................5

ARGUMENT .........................................................................6

I.    THE CONSTITUTION DOES NOT ENDOW FORMER PRESIDENTS
    WITH IMMUNITY FROM CRIMINAL PROSECUTION ...............6

    A.    No Constitutional Provision Immunizes Former
        Presidents From Criminal Responsibility .............................6

    B.    History And Settled Practice Confirm That Former
        Presidents Are Not Immune From Federal Criminal
        Prosecution, Even For Official Acts .....................................9

    C.    Extending Criminal Immunity To Former Presidents
        Would Subvert The Separation Of Powers And
        Undermine The Public Interest ..........................................13

        1.    Granting Former Presidents Immunity Would
            Intrude On The Executive Branch's Authority.......................14

        2.    The Public Interest Overwhelmingly Outweighs
            Any Purported Intrusion on the Executive Branch..................20

II.    EVEN IF FORMER PRESIDENTS HAD SOME LIMITED IMMUNITY
    AGAINST CRIMINAL PROSECUTION, IT COULD NOT
    CONCEIVABLY REACH THE ACTS ALLEGED HERE .........................21

CONCLUSION ....................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES*

## CASES

Page(s)

*Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023)....................................21, 23, 24

*Clinton v. Jones*, 520 U.S. 681 (1997)..................................................................2, 16

*Gravel v. United States*, 408 U.S. 606 (1972) ...........................................................16

*Imbler v. Pachtman*, 424 U.S. 409 (1976)..................................................................8

*Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ..................17, 18

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982).............................. 13, 14, 16, 17, 18, 20

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................16

*Ruan v. United States*, 597 U.S. 450 (2022)............................................................19

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020)...............................................14

*Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021)..............................................15, 18

*Trump v. Thompson*, 142 S. Ct. 680 (2022)..............................................................18

*Trump v. Vance*, 140 S. Ct. 2412 (2020) ..................................................................19

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................................19

*United States v. Claiborne*, 765 F.2d 784 (9th Cir. 1985)..........................................8

*United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1974)..............................................8

*United States v. Lee*, 106 U.S. 196 (1882)...............................................................20

*United States v. Nixon*, 418 U.S. 683 (1974)................................................3, 13, 15

*United States v. O'Brien*, 560 U.S. 218 (2010) .......................................................19

---

* Authorities upon which amici curiae chiefly relies is marked with asterisks.

# DOCKETED CASES

*Texas v. Pennsylvania*, No. 22O155 (U.S.) ...............................................23

*United States v. Trump*, No. 23-624 (U.S.)....................................................6

# CONSTITUTIONAL PROVISIONS AND RULES

U.S. Const.
       art. I, § 3, cl.7 ...............................................................................7
       art. I, § 6, cl. 1 .............................................................................7
       art. II, § 1, cl. 1 .............................................................5, 6, 14, 25
       art. II, § 1, cl. 2 ....................................................................6, 24
       art. II, § 1, cl. 3 ....................................................................6, 24
       art. II, § 1, cl. 4 ....................................................................6, 24
       art. II, § 3.............................................................................14
       art. II, § 4.............................................................................8
       amend. V............................................................................19
       amend. XX, § 1 ..................................................................25

Fed. R. App. P. 29 ...................................................................................1

# LEGISLATIVE AND PRESIDENTIAL MATERIALS

167 Cong. Rec. S601 (daily ed. Feb. 9, 2021) .........................................12

167 Cong. Rec. S735 (daily ed. Feb. 13, 2021) .......................................12

H.R. Res. 24, 117th Cong. (2021)..........................................................12

*Brief on behalf of the President of the United States: Hearings Before
    The Committee On The Judiciary, House of Representatives,
    93rd Cong., 2d Sess. Pursuant to H. Res. 803* (July 18, 1974),
    https://tinyurl.com/yb9n9cxz.........................................................11

*President Gerald R. Ford's Proclamation 4311, Granting a Pardon to
    Richard Nixon*, Ford Presidential Library (Sept. 8, 1974),
    https://tinyurl.com/5c6xb3m9........................................................10

*Statement by Former President Richard Nixon*, Ford Presidential
    Library (Sept. 8, 1974), https://tinyurl.com/5yuj8r8k ...................11

## OTHER AUTHORITIES

Barnhart, Toria, *As Andrew Cuomo Charged, These Other Governors Have Faced Criminal Charges*, Newsweek (Oct. 28, 2021), https://tinyurl.com/4s5x82p9 .............................................................9

Harris, John F. & Bill Miller, *In a Deal, Clinton Avoids Indictment*, Wash. Post (Jan. 20, 2001), https://tinyurl.com/bdekva86 ...........................10

Prakash, Saikrishna Bangalore, *Prosecuting and Punishing Our Presidents*, 100 Tex. L. Rev. 55 (2021) .......................................................10

The Federalist No. 67 (Alexander Hamilton), http://tinyurl.com/4pth25h3 .............................................................9

The Federalist No. 69 (Alexander Hamilton), http://tinyurl.com/y8m79547 ...........................................................9

*Transcript of David Frost's Interview with Richard Nixon*, Teaching American History (1977), https://tinyurl.com/3tepc92n ..............................11

## INTEREST OF AMICI CURIAE[1]

Amici are 16 former prosecutors, elected officials, other government officials, and constitutional lawyers who have collectively spent decades defending the Constitution, the interests of the American people, and the rule of law. As such, amici have an interest in the proper scope of executive power and the faithful enforcement of criminal laws enacted by Congress. Amici respectfully submit this brief to explain why the immunity defendant seeks in this case is inconsistent with our Constitution and would subvert the bedrock principle that no person is above the law.

**Bradford A. Berenson** served as Associate Counsel to the President in the George W. Bush Administration (2001-2003).

**Gregory A. Brower** served as U.S. Attorney for the District of Nevada in the George W. Bush and Obama Administrations, appointed by President George W. Bush (2008-2009).

**Tom Campbell** served as a Member of the U.S. House of Representatives (R-CA) (1989-1993, 1995-2001); and is the Doy and Dee Henley Distinguished Professor of Jurisprudence at the Chapman University Fowler School of Law.

---

[1] Amici submit this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2). No counsel for a party authored this brief in whole or in part, and no person other than the amici curiae or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

- 1 -

**Ty Cobb** served as Special Counsel to the President in the Trump Administration (2017-2018); Senior Trial Counsel to Independent Counsel Judge Arlin Adams (1995); and Assistant U.S. Attorney for the District of Maryland (1980-1986).

**Tom Coleman** served as a Member of the U.S. House of Representatives (R-MO) (1976-1993).

**George T. Conway III** serves as Board President, Society for the Rule of Law; and he principally authored the brief for respondent opposing immunity in *Clinton v. Jones*, 520 U.S. 681 (1997).

**John J. Farmer Jr.** served as New Jersey Attorney General, appointed by Governor Christine Todd Whitman (1999-2002); Chief Counsel to Governor Whitman (1997-1999); Deputy Chief Counsel to Governor Whitman (1996-1997); Assistant U.S. Attorney for the District of New Jersey in the George H.W. Bush and Clinton Administrations (1990-1994); and Senior Counsel to the 9/11 Commission (2003-2004).

**Patrick J. Fitzgerald** served as U.S. Attorney for the Northern District of Illinois in the George W. Bush and Obama Administrations, appointed by President George W. Bush (2001-2012); and Special Counsel for the U.S. Department of Justice (2003-2007).

**William Kristol** served as Chief of Staff to Vice President Dan Quayle (1989-1993).

**Philip Allen Lacovara** served as Deputy Solicitor General in the Nixon Administration (1972-1973); Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office (1973-1974); and drafted the brief for the United States and presented argument in *United States v. Nixon*, 418 U.S. 683 (1974).

**John McKay** served as U.S. Attorney for the Western District of Washington in the George W. Bush Administration (2001-2007).

**Trevor Potter** served as Chairman of the Federal Election Commission (1994); and Commissioner of the Federal Election Commission, appointed by President George H.W. Bush (1991-1995).

**Claudine Schneider** served as a Member of the U.S. House of Representatives (R-RI) (1981-1991).

**Fern M. Smith** served as Judge of the U.S. District Court for the Northern District of California, appointed by President Reagan (1988-2005); and as Director of the Federal Judicial Center (1999-2003).

**Olivia Troye** served as Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence (2018-2020).

**William F. Weld** served as Governor of Massachusetts (1991-1997); U.S. Assistant Attorney General for the Criminal Division in the Reagan Administration (1986-1988); and U.S. Attorney for the District of Massachusetts in the Reagan Administration (1981-1986).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant, former President Trump, asks this Court to grant him immunity from federal criminal prosecution for all official acts he took while he occupied the Presidency.  The district court concluded that this extraordinary request has no basis in our constitutional text, structure, or history, and amici agree.

I.  Defendant's position cannot be squared with the Constitution's text or history.  He repeatedly invokes implied separation-of-powers principles, contending that the imposition of criminal liability on him would unduly impair the Executive Branch.  But it is defendant's claimed immunity—not his prosecution— that would undermine those principles.  The immunity he seeks would severely impair the ability of the current President, in whom all executive powers are vested, *see* U.S. Const. art. II, § 1, cl. 1, to take care that Congress's laws proscribing obstruction of federal elections are faithfully executed.  And by asking the Judicial Branch to fashion a sweeping atextual immunity from whole cloth, he draws the Judiciary and the Executive into conflict.

II.  Even if former Presidents had some limited immunity from criminal prosecution, it could not conceivably cover the acts alleged here.  *First*, many of the acts alleged in this indictment plainly constitute campaign activities that would not be protected even if there were some official-duty immunity from criminal prosecution.  *Second*, defendant's alleged acts fall far outside any core presidential

- 5 -

duty or function: many of the acts alleged plainly constitute electioneering, and in any event, the Constitution entrusts presidential elections to the States and the Congress, not to the President. U.S. Const. art. II, § 1, cls. 2, 3, 4. Indeed, the alleged criminal activity here raises a uniquely dangerous constitutional threat— the Chief Executive using his purported authority to violate the Executive Vesting Clause, U.S. Const. art. II, § 1, cl. 1, and remain in power beyond his legitimate term. Such activity threatens our constitutional structure at its core and, by its very nature, eviscerates one of the primary constitutional checks on presidential misconduct—rebuke by the people at the ballot box.

## ARGUMENT

### I.    THE CONSTITUTION DOES NOT ENDOW FORMER PRESIDENTS WITH IMMUNITY FROM CRIMINAL PROSECUTION

Defendant's claimed immunity finds no support in the Constitution's text or historical practice. Nor can it remotely be squared with separation-of-powers principles made explicit in the Executive Vesting Clause and inherent in the structure of the Constitution; to the contrary, it subverts them.

#### A.    No Constitutional Provision Immunizes Former Presidents From Criminal Responsibility

As the district court correctly noted, "[t]here is no 'Presidential Immunity' Clause" in the Constitution. JA604-605 (Dist. Ct. Op.), *cert. before judgment denied*, *United States v. Trump,* No. 23-624 (U.S. Dec. 22, 2023). That omission is

telling.  The Framers plainly knew how to shield officials from liability when they wanted to do so, as the Speech or Debate Clause illustrates.  *See* U.S. Const. art. I, § 6, cl. 1 (providing that "for any Speech or Debate in either House," congresspersons "shall not be questioned in any other Place").

Far from barring the prosecution of former Presidents, the Constitution's text explicitly contemplates such proceedings.  The Impeachment Judgment Clause provides that "[j]udgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States:  but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law."  U.S. Const. art. I, § 3, cl.7.  The Clause preserves the Executive's ability to hold a former official "liable and subject to Indictment, Trial, Judgment and Punishment, according to Law," while limiting Congress's power of impeachment to removal and disqualification from certain positions.  *Id.*

Defendant's alternate interpretation—that the Impeachment Judgment Clause permits prosecution of former Presidents *only* if they have first been impeached and convicted at trial by the Senate—has no basis in the text.  The Clause speaks to "identifying the … penalties associated with impeachment," not limiting the criminal prosecution of former officeholders.  JA607 (Dist. Ct. Op.).  And the error of defendant's reading is underscored by its sweeping and absurd

consequences.  It could effectively immunize former Presidents for criminal

conduct that occurs, or is discovered, too late for the impeachment process to run

its course.  Even more fundamentally, the Impeachment Judgment Clause pertains

to the Senate's authority over *all* impeachable officers—not only the President, but

also the "Vice President and all civil Officers of the United States."  U.S. Const.

art. II, § 4.  Under defendant's interpretation, the Executive would lack power to

prosecute all current and former civil officers for acts taken in office unless

Congress first impeached and convicted them.  That would permit countless

officials to evade criminal liability, including when the charges do not fit into the

class of crimes that qualify for impeachment, and potentially when officials'

crimes are discovered only after they leave office.

Such an outcome would also contradict decades of practice in which the

Executive Branch has prosecuted, and the Judicial Branch has convicted, civil

officers for crimes committed while in office—regardless of whether they were

first convicted in an impeachment trial.  *See, e.g.*, *United States v. Isaacs*, 493 F.2d

1124, 1144 (7th Cir. 1974) (per curiam) ("[W]e are convinced that a federal judge

is subject to indictment and trial before impeachment."); *Imbler v. Pachtman*, 424

U.S. 409, 429 (1976) (stating that prosecutors would "fare no better" than judges,

"[who] could be punished criminally"); *United States v. Claiborne*, 765 F.2d 784,

- 8 -

788, 805 (9th Cir. 1985) (affirming conviction of sitting district court judge convicted of "willfully underreport[ing] his taxable income").

In sum, the Constitution does not confer any kind of immunity upon former Presidents for conduct that violates the criminal laws of the United States and instead contemplates that a former President might be prosecuted for crimes committed in office.

### B. History And Settled Practice Confirm That Former Presidents Are Not Immune From Federal Criminal Prosecution, Even For Official Acts

Historical practice confirms that former Presidents are not immune from federal criminal prosecution, even for official acts. While the "king of Great Britain [was] sacred and inviolable" and "amenable" to "no constitutional tribunal," the Framers ensured the President would be "liable to prosecution and punishment in the ordinary course of law." The Federalist No. 69 (Alexander Hamilton), http://tinyurl.com/y8m79547.

The Framers intended the Presidency to bear a closer "resemblance" to "the governor of New York," The Federalist No. 69 (Alexander Hamilton), than to a monarch with "royal prerogatives[,]" The Federalist No. 67 (Alexander Hamilton), http://tinyurl.com/4pth25h3. Former Governors, of course, are subject to federal criminal prosecution. *See* Barnhart, *As Andrew Cuomo Charged, These Other Governors Have Faced Criminal Charges*, Newsweek (Oct. 28, 2021),

- 9 -

https://tinyurl.com/4s5x82p9.  So too does the Constitution require that a former President be held responsible for his violations of criminal law.

Past practice reflects this understanding.  Former Presidents have recognized their and their predecessors' vulnerability to prosecution.  President Clinton, for example, expressly admitted that he gave false testimony under oath as part of "a deal with the independent counsel … that ensure[d] he [would] avoid indictment"—a deal that would be unnecessary if he were immune from prosecution.  Harris & Miller, *In a Deal, Clinton Avoids Indictment*, Wash. Post (Jan. 20, 2001), https://tinyurl.com/bdekva86.  During his first term, President Grant was arrested for speeding his carriage along the streets of Washington, D.C. Prakash, *Prosecuting and Punishing Our Presidents*, 100 Tex. L. Rev. 55, 82-83 (2021).  President Grant did not claim immunity, but submitted to arrest, posted (and later forfeited) collateral for a court appearance, and "signaled a welcome willingness to honor a familiar principle:  every American is equal before the law." *Id.* at 83.

Historical practice also recognizes that former Presidents can be criminally liable even for acts allegedly committed in the context of official presidential business.  President Ford, for example, granted President Nixon a "full, free, and absolute pardon" for "all offenses against the United States" committed during his administration, and President Nixon accepted the pardon.  *See President Gerald R.*

- 10 -

*Ford's Proclamation 4311, Granting a Pardon to Richard Nixon*, Ford Presidential Library (Sept. 8, 1974), https://tinyurl.com/5c6xb3m9; *Statement by Former President Richard Nixon* 1, Ford Presidential Library (Sept. 8, 1974), https://tinyurl.com/5yuj8r8k.  President Nixon had attempted to wrap his wrongdoing in the mantle of official presidential investigatory action, just as defendant does here.[2]  Nevertheless, Presidents Ford and Nixon recognized, by granting and accepting the pardon, that a pardon was necessary to shield the former President from criminal prosecution for allegedly official acts.

Indeed, defendant himself acknowledged during his second impeachment trial that a former President is subject to criminal prosecution for allegedly official acts.  His counsel made clear that "no former officeholder is immune" from the criminal judicial process:

> The Constitution expressly provides in article I, section 3, clause 7 that a convicted party, following impeachment, "shall nevertheless be

---

[2]  *See, e.g.*, *Brief on behalf of the President of the United States: Hearings Before The Committee On The Judiciary, House of Representatives, 93rd Cong., 2d Sess. Pursuant to H. Res. 803*, at 68 (July 18, 1974) ("[T]he President conducted a personal investigation and, based on the results of this investigation and in coordination with the Department of Justice, took Presidential action and removed several key White House staff members from office.  The President's action was a function of his constitutionally-directed power to see that the laws are 'faithfully executed' and was well within the wide discretion afforded him under the executive power doctrine."), https://tinyurl.com/yb9n9cxz; *cf. Transcript of David Frost's Interview with Richard Nixon*, Teaching American History (1977) (statement of former President Nixon) ("[W]hen the president does it … that means that it is not illegal."), https://tinyurl.com/3tepc92n.

liable and subject to indictment, trial, judgment, and punishment according to law" [after removal]. *Clearly, a former civil officer who is not impeached is subject to the same.*

We have a judicial process in this country. *We have an investigative process in this country to which no former officeholder is immune. That is the process that should be running its course.* That is the process the bill of attainder [clause] tells us is the appropriate one for investigation, prosecution, and punishment, with all of the attributes of that branch. … [The Article III courts] provide that kind of appropriate adjudication. That is accountability.

167 Cong. Rec. S601, S607 (daily ed. Feb. 9, 2021) (emphases added).

Just as importantly, Senators voting for acquittal at defendant's impeachment trial expressly *relied* on the continued availability of criminal prosecution for the President's wrongful actions. *See* 167 Cong. Rec. S735, S736 (statement of Sen. McConnell) (daily ed. Feb. 13, 2021) ("President Trump is still liable for everything he did while he was in office, as an ordinary citizen—unless the statute of limitations is run, still liable for everything he did while he was in office. He didn't get away with anything yet … . We have a criminal justice system in this country."). Those proceedings involved the same acts alleged in the indictment here. H.R. Res. 24, 117th Cong. (2021) (Article of Impeachment).

In short, the immunity defendant seeks would break with settled practice and tradition and contradict the positions defendant himself previously took regarding his exposure to criminal liability.

- 12 -

C.    **Extending Criminal Immunity To Former Presidents Would Subvert The Separation Of Powers And Undermine The Public Interest**

Defendant contends that structural separation-of-powers principles compel his immunity from criminal prosecution.  Exactly the opposite is true:  it is his claimed immunity, not his prosecution, that would subvert the separation of powers.

In *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the Supreme Court reasoned that any kind of presidential immunity must be "rooted in the separation of powers under the Constitution," since the text of the Constitution does not explicitly grant any such shield.  *Id.* at 753 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)).  But "[i]t is settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President."  *Id.* at 753-754.  Rather, whether a court should decline to exercise jurisdiction over the President requires a court to "balance [1] the constitutional weight of the interest to be served" by the exercise of jurisdiction "against [2] the dangers of intrusion on the authority and functions of the Executive Branch."  *Id.* at 754.

Here, there is no need to balance the two factors set out in *Fitzgerald* against each other, as neither weighs in defendant's favor.  Granting *former* Presidents immunity from criminal prosecution would greatly "intru[de] on the authority and functions" of the *current* Executive Branch, in violation of the Take Care and

- 13 -

Executive Vesting Clauses. *Fitzgerald*, 457 U.S. at 754. And there are few

weightier constitutional interests than the public's interest in the enforcement of

the federal criminal laws that protect our Constitution's electoral processes from

abuse.

### 1. Granting Former Presidents Immunity Would Intrude On The Executive Branch's Authority

Defendant contends that the Judiciary—by exercising jurisdiction over him

based on acts taken while he was President—intrudes on the Executive Branch's

authority. Quite the opposite is true.

The Executive Branch, acting within the core of its constitutional

responsibility to "take Care that the Laws be faithfully executed," U.S. Const. art.

II, § 3, has decided, after years of investigation and deliberation, to pursue criminal

charges against defendant. Defendant's claim to immunity thus poses an internal

Executive Branch dispute between *two* Executives—one former, one current—not

an interbranch conflict such as the one at issue in *Trump v. Mazars USA, LLP*, 140

S. Ct. 2019, 2033 (2020) (noting "the significant separation of powers issues raised

by congressional subpoenas for the President's information").

And in the present dispute, there is not much of a contest. The Executive

Vesting Clause vests the executive power in a single President—the current

President. U.S. Const. art. II, § 1 cl. 1 ("The executive Power shall be vested in *a*

President of the United States of America." (emphasis added)); *see also Trump v.*

- 14 -

*Thompson*, 20 F.4th 10, 33 (D.C. Cir. 2021) ("Under our Constitution, we have one President at a time.").  As a former President claiming constitutional authority belonging to an office he no longer occupies—for the express purpose of undermining the Executive Branch's authority to prosecute him (indeed, for subverting the peaceful transition of power the Constitution dictates)—defendant's arguments lack any constitutional purchase.  His claim to the mantle of protecting executive interests is particularly weak where, as here, the Department of Justice— the institution tasked with protecting the long-term interests of the Executive Branch—is the authority bringing the suit and disclaiming the theory of immunity he espouses.

Exercising jurisdiction here, then, does not impair another Branch's prerogative; rather, it vindicates the current Executive's interest in enforcing the laws and the Judiciary's interest in the adjudication of an alleged criminal offense. *See Nixon*, 418 U.S. at 707 ("The impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions would plainly conflict with the function of the courts under Art. III.").

By contrast, defendant's claim to immunity is antithetical to and subversive of the separation of powers.  Defendant's argument would intrude upon the Judicial Branch's constitutional power to "check" the Executive, even as defendant

- 15 -

simultaneously seeks to wield the Judicial Branch to obstruct the Executive's

prosecutorial prerogatives.  But "'the separation-of-powers doctrine requires that a

branch not impair another in the performance of its constitutional duties.'"  *Clinton*

*v. Jones*, 520 U.S. 681, 701 (1997).  Indeed, the Supreme Court has made clear that

it has "never held that the performance of the duties of judicial, legislative, or

executive officers, requires or contemplates the immunization of otherwise

criminal deprivations of constitutional rights," because "the judicially fashioned

doctrine of official immunity does not reach 'so far as to immunize criminal

conduct proscribed by an Act of Congress.'"  *O'Shea v. Littleton*, 414 U.S. 488,

503 (1974) (quoting *Gravel v. United States*, 408 U.S. 606, 627 (1972)).  Similarly

here, the judicial power should not be employed to subvert the authority of the

Executive Branch as it seeks to enforce criminal statutes enacted by the Legislative

Branch.

Defendant cites *Fitzgerald* to argue that his immunity is necessary to avoid

chilling a President's capacity to "deal fearlessly and impartially with the duties of

his office."  *See* Appellant Br. 24 (quoting *Fitzgerald*, 457 U.S. at 752).  But

*Fitzgerald* rejected only private *civil* suits against a former President.  *Fitzgerald*

underscored that jurisdiction would be "warranted" when, as here, such action is

necessary "to vindicate the public interest in an ongoing *criminal* prosecution."

457 U.S. at 754 (emphasis added).

Indeed, the possibility that the President might be "chilled" in his executive functions by threat of later criminal sanction is baked into the Constitution itself. The President is *always* at risk of impeachment for "high Crimes and Misdemeanors," and *always* at risk of criminal prosecution, since even under defendant's theory, prosecution may follow impeachment. *Fitzgerald*'s concern about the potential chilling effects of myriad *civil* suits is therefore simply inapposite in the criminal context, where the constitutional design expressly contemplates that a President will perform his duties despite the threat—and perhaps perform those duties better *because of* the threat—of impeachment and/or conviction for criminal actions.

Finally, the policy concerns underlying *Fitzgerald* do not support its extension to the criminal context. *First*, the Judiciary's role in safeguarding the Executive's free rein to "'deal fearlessly … with' the duties of the office," 457 U.S. at 752, sits differently in the federal criminal context. The fact that federal criminal prosecution is brought by the Executive Branch diminishes the likelihood that improper intrusion will occur. The current Executive is, of course, "vitally concerned with and in the best position to assess the present and future needs of the Executive Branch." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 449 (1977). The decision of the incumbent Executive to file criminal charges against a former President—particularly in light of the certainty that all Presidents will

someday add "former" to their title and thus must concern themselves with the

precedent they set—"detracts from the weight" of defendant's assertion that

absolute immunity from federal criminal prosecution is necessary to protect the

Presidency. *Id*.; *see id.* ("[T]he fact that neither President Ford nor President

Carter supports appellant's claim detracts from the weight of his contention that

the Act impermissibly intrudes into the executive function and the needs of the

Executive Branch.").[3]

*Second*, the risk of "intrusion" posed by private civil suits brought against a

former President is markedly different from the risk posed by a former President's

federal criminal prosecution. While the *Fitzgerald* Court expressed concern that a

former President would be an "easily identifiable target" for "numerous suits" for

civil liability, 457 U.S. at 753 & n.33, there is but a single Executive Branch

empowered to bring federal criminal charges. Denying immunity in this context

thus does not expose a former President to a multitude of suits possible in the civil

---

[3] *Cf. Thompson*, 20 F.4th at 32-33 ("A court would be hard-pressed under these circumstances to tell the President that he has miscalculated the interests of the United States … ."). Moreover, even if a court were inclined to question whether a current Executive's decisions regarding, for example, whether to waive executive privilege adequately protect the Executive Branch's long-term interests, *see Trump v. Thompson*, 142 S. Ct. 680 (2022) (Kavanaugh, J., respecting denial of application for stay), a court should be particularly loath to use the Article III judicial power to second-guess an incumbent Executive regarding a core Article II obligation that the Constitution assigns to him—ensuring that the criminal laws are faithfully executed.

context, but instead to the decision of a single, politically accountable branch of government.  Subject to the Attorney General's oversight, officers of that single branch must adhere to professional obligations prohibiting frivolous or malicious prosecutions—an obligation so well recognized that prosecutors are presumed, "'absen[t] … clear evidence to the contrary'" to "'have properly discharged their official duties.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  Even when prosecutors issue an indictment, they are bound by yet another check:  the required sign-off from a grand jury "prohibited from engaging in 'arbitrary fishing expeditions'" or acting "'out of malice or an intent to harass.'"  *Trump v. Vance*, 140 S. Ct. 2412, 2428 (2020).

*Third*, criminal defendants enjoy robust procedural protections from the judiciary not available to civil litigants, including the privilege against self-incrimination, U.S. Const. amend. V, the higher burden of proof placed upon the Government to establish criminal liability, *see, e.g.*, *United States v. O'Brien*, 560 U.S. 218, 224 (2010), and the heightened *mens rea* requirement for criminal liability, *see*, *e.g.*, *Ruan v. United States*, 597 U.S. 450, 457-458 (2022).  Those features alleviate the risk that a President will face judicial process for an action undertaken in good faith while occupying the office of the Presidency.

### 2.     The Public Interest Overwhelmingly Outweighs Any Purported Intrusion on the Executive Branch

On the other side of the scale, the public interest in the enforcement of federal criminal law far outweighs any perceived intrusion on the Executive Branch.  "When judicial action is needed to serve broad public interests—as when the Court acts … to vindicate the public interest in an ongoing criminal prosecution—the exercise of jurisdiction has been held warranted." *Fitzgerald*, 457 U.S. at 754 (citations omitted).  It is difficult to imagine a weightier public interest in the exercise of jurisdiction than in the cases where defendant's theory of immunity would apply:  to charges that a former President took actions in his official capacity that violated criminal law—indeed that he acted to subvert the democratic transition of power the Constitution itself mandates.

Even if the exercise of jurisdiction in this case posed some limited intrusion on the Executive Branch, *but see supra* Part I.C.1, the public's interest in judicial process to adjudicate intentional criminal abuses of executive power would be more than sufficient to overcome it.  Affording former Presidents virtual impunity for even the most egregious misconduct would controvert a fundamental norm of our constitutional scheme:  that "[n]o man in this country is so high that he is above the law." *United States v. Lee*, 106 U.S. 196, 220 (1882).

## II. EVEN IF FORMER PRESIDENTS HAD SOME LIMITED IMMUNITY AGAINST CRIMINAL PROSECUTION, IT COULD NOT CONCEIVABLY REACH THE ACTS ALLEGED HERE

Even if one could hypothesize a circumstance in which immunity for a former President might be warranted, no tenable formulation of immunity could reach defendant's machinations alleged here. The indictment alleges that defendant in many instances acted as a *private* candidate for re-election. Even defendant's own theory provides no immunity over such activities. Further, defendant allegedly acted to thwart the peaceful transfer of power that the Constitution demands. Any immunity that would shield those acts would contravene fundamental constitutional provisions.

*First*, even if it could conceivably be proper to transplant *Fitzgerald*'s "outer perimeter" test from the private civil liability context to the federal criminal context, defendant's argument fails on its own terms. That is because many of the actions alleged in the indictment are ones defendant took in his private capacity as a candidate for re-election. Even defendant's own theory provides no immunity for such activities.

As this Court recently explained in a private civil damages suit arising out of the same series of events alleged here, a defendant cannot claim the shield of official-duty immunity for actions taken in his private capacity as a candidate for re-election. *Blassingame v. Trump*, 87 F.4th 1, 3-4 (D.C. Cir. 2023). Just as in

*Blassingame*, many of the allegations here pertain to defendant's role as a candidate seeking to retain his office, not as a President conducting official business.

The indictment alleges that defendant launched his conspiracy to subvert the legitimate results of the 2020 election shortly after election day.  JA32 (¶13). Rebuffed by members of his original campaign staff, defendant cobbled together a shadow campaign led by Co-Conspirator 1, who "would spearhead his efforts going forward to challenge the election results."  *Id*.  He was joined in those efforts by the other co-conspirators listed in the indictment who—with the exception of Co-Conspirator 4—were private individuals working to effectuate a second term in office for defendant—not official members of defendant's administration working on the business of running the country.  *See* JA26-27 (¶8).  By contrast, official members of defendant's administration repeatedly explained to him that his claims of election fraud were untrue and refused to engage in his scheme.  *See* JA30 (¶11(a)-(e)).

Many of defendant's alleged actions in furtherance of the conspiracy relied directly on campaign resources.  Most notably, the indictment alleges that defendant leaned heavily on campaign staff to organize fraudulent slates of electors to transmit false certificates to Congress.  For example, after devising the plan, "the Defendant and Co-Conspirator 2 called the Chairwoman of the Republican

National Committee to ensure that the [elector] plan was in motion," telling her that "it was important for the RNC to help the Defendant's Campaign gather electors in targeted states, and falsely represent[ing] to her that such electors' votes would be used only if ongoing litigation in one of the states changed the results in the Defendant's favor."  JA46 (¶56); *see also, e.g.*, JA47-49 (¶¶61, 63-64).  These activities were "organized, promoted, and funded by campaign channels, personnel, and resources," and were accordingly unofficial in nature. *Blassingame*, 87 F.4th at 21.

Moreover, as this Court observed in *Blassingame*, even defendant acknowledged that his efforts to challenge the results of the election were unofficial acts taken in his private capacity.  *See* 87 F.4th at 16-17.  When defendant moved to intervene in the Supreme Court's consideration of *Texas v. Pennsylvania*, No. 22O155 (U.S. Dec. 9, 2020) ("Trump S. Ct. Mot. to Intervene"), "he specifically explained to the Supreme Court (and captioned his filing accordingly) that he sought to 'intervene in this matter in his personal capacity as a candidate for re-election to the office of President of the United States,'" so that he might "'protect his unique and substantial personal interests as a candidate for re-election to the Office of President.'"  *Blassingame*, 87 F.4th at 16 (quoting Trump S. Ct. Mot. to Intervene 14, 24).  The primary purpose of granting a President official-act immunity from civil liability—"assuring that the President is not

- 23 -

'unduly cautious in the discharge of his official duties'" simply "has no salience" where, as here, "the President acts—by his own admission—in an unofficial, private capacity." *Id*.

*Second*, even those acts that defendant argues were undertaken in his official capacity are so irreconcilable with the commands of the Constitution and legitimate executive functions that no viable formulation of immunity could support shielding them. Far from constituting an executive prerogative, those acts do not relate to any assigned presidential duty. Rather, the Constitution explicitly tasks the States with selecting presidential electors. *See* U.S. Const. art. II, § 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors … ."). It gives Congress the power to "determine the Time of chusing the Electors, and the Day on which they shall give their Votes." *Id.* art. II, § 1, cl. 4. And it directs the President of the Senate, "in the Presence of the Senate and House of Representatives," to oversee the electoral count. *Id.* art. II, § 1, cl. 3. Notably absent is *any* contemplated role for the President, perhaps in recognition of a President's self-interest when seeking re-election. Defendant's alleged efforts to subvert the electoral process and interject fake electors to usurp the role of the electors duly appointed by the States is thus not a legitimate exercise of executive power, let alone a core executive function. To the contrary, those

- 24 -

efforts represent a transgression of the separation of powers and a breach of our republican form of government that would have outraged the Founders.

Indeed, defendant's alleged scheme is a frontal assault on the Constitution's Executive Vesting Clause, which provides that "the executive Power shall be vested in a President of the United States of America," who "shall hold his Office during the Term of four Years."  U.S. Const. art. II, § 1 cl. 1.  The Twentieth Amendment reiterates that the President's term "*shall end* at noon on the 20th day of January …; and the term[]of [the] successor[]shall then begin."  *Id*. amend. XX, § 1 (emphasis added).  Accordingly, when a President's re-election efforts fail, the Constitution requires that the President be divested of executive power so it can be vested in his successor.  To allow a President who has failed to win re-election to leverage his existing power to *prevent* the constitutionally required vesting of executive power in his successor would endanger one of the most fundamental operations of the Constitution:  the peaceful transfer of executive power at the end of a President's term.  Indeed, granting a former President the immunity defendant seeks here would create a perverse incentive for sitting Presidents to engage in misconduct in order to stay in power illegally.  A President could override the electoral will of the nation and maintain control of the government with near impunity, tempered only by the off chance that his opposition might, for the first time in history, successfully impeach and convict him.  This Court should reject

any theory of presidential immunity that would endanger the operation of the Executive Vesting Clause, which has preserved the stability of our Nation for over 200 years.

## CONCLUSION

The Court should affirm the district court's decision.

Respectfully submitted.

/s/ *Seth P. Waxman*

FRED WERTHEIMER
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Avenue NW
Washington, DC 20036
(202) 355-9600

MATTHEW A. SELIGMAN
STRIS & MAHER LLP
777 S. Figueroa Street, Suite 3850
Los Angeles, CA 90017
(213) 995-6873

SETH P. WAXMAN
TODD C. ZUBLER
COLLEEN M. CAMPBELL
NATHANIEL W. REISINGER
DAVID M. LEVINE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

KYLE T. EDWARDS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, CA 94111
(628) 235-1000

December 29, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i).

1.  Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,505 words.

2.  The brief has been prepared in proportionally spaced typeface using Microsoft Office for Word 365 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/ Seth P. Waxman*
SETH P. WAXMAN

December 29, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Seth P. Waxman*

SETH P. WAXMAN