ORAL ARGUMENT SET FOR JANUARY 9, 2024
No. 23-3228

# United States Court of Appeals
# for the District of Columbia Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP,

*Defendant-Appellant.*

Appeal from the U.S. District Court for the District of Columbia
Criminal Case No. 1:23-cr-00257-TSC (Hon. Tanya S. Chutkan)

**BRIEF OF FORMER ATTORNEY GENERAL EDWIN MEESE III
AND LAW PROFESSORS
STEVEN G. CALABRESI AND GARY S. LAWSON
AS *AMICI CURIAE* SUPPORTING NEITHER PARTY**

GENE C. SCHAERR
 *Counsel of Record*
JUSTIN A. MILLER*
AARON C. WARD*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

December 30, 2023

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

*Amici curiae* former Attorney General Edwin Meese III and law professors Steven G. Calabresi and Gary S. Lawson certify as follows:

### A.     Parties and *Amici*

Except for the following *amici* in this Court, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Briefs for Plaintiff-Appellee and Defendant-Appellant. In addition to the *amici* in the court below and those named in this brief, the following *amici* have filed briefs in this Court as of the time this Brief was finalized for filing: Bradford A. Berenson, Gregory A. Brower, Tom Campbell, Ty Cobb, Tom Coleman, George T. Conway III, John J. Farmer Jr., Patrick J. Fitzgerald, William Kristol, Philip Allen Lacovara, John McKay, Trevor Potter, Claudine Schneider, Fern M. Smith, Olivia Troye, William F. Weld, and American Oversight.

### B.     Rulings Under Review

References to the rulings at issue appear in the Briefs for Plaintiff-Appellee and Defendant-Appellant.

## C.    Related Cases

References to related cases appear in the Briefs for the Plaintiff-Appellee and Defendant-Appellant.

*/s/ Gene C. Schaerr*
GENE C. SCHAERR
*Counsel of Record*

## CORPORATE DISCLOSURE STATEMENT

*Amici curiae* former Attorney General Edwin Meese III and law professors Steven G. Calabresi and Gary S. Lawson certify that they are natural persons, and as such have no parent corporations or stock.

<u>*/s/ Gene C. Schaerr*</u>
GENE C. SCHAERR
 *Counsel of Record*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

## STATEMENT PURSUANT TO D.C. CIRCUIT RULE 29(d)

A separate brief is necessary for the presentation to this Court of present *amici's* distinctive views of the ultra vires appointment of Special Counsel Jack Smith, a point not previously raised by the parties but that can be addressed for the first time on appeal by this Court. Because these *amici* are not filing in support of either party and are requesting vacatur, unlike other *amici* in this case, it is not possible to consolidate *amicus* briefs.

*/s/ Gene C. Schaerr*
GENE C. SCHAERR
 *Counsel of Record*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

iv

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW,
    AND RELATED CASES ........................................................................i

CORPORATE DISCLOSURE STATEMENT ........................................ iii

STATEMENT PURSUANT TO D.C. CIRCUIT RULE 29(d) .................iv

TABLE OF AUTHORITIES ...................................................................vii

STATEMENT OF IDENTITY, INTEREST IN CASE, AND
    SOURCE OF AUTHORITY TO FILE ...................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ...........................................................................................6

    I.     No Statute Authorizes the Position of Special Counsel
         Supposedly Held by Smith. .........................................................6

        A.    Only Congress Can Create a Federal Office. .....................6

        B.    The Organic Statutes of the Department of Justice
            Do Not "By Law" Vest in the Attorney General of the
            United States the Power to Appoint Officers with
            the Power of Supposed Special Counsel Smith.................9

    II.    The Appointments Clause Establishes a Default Rule that
         All Heads of Departments, Principal Officers, and
         Superior Officers Require Presidential Nomination,
         Senate Confirmation, and then Presidential
         Appointment. ...........................................................................23

    III.    Even If Special Counsels Were Statutorily Authorized,
         They Would Be Superior Officers Who Would Need
         Presidential Nomination and Senate Confirmation. ................26

    IV.    This Panel is Not Bound by Contrary Circuit Precedent
         because *Seila Law* is Supervening Authority, and This
         Issue May be Reached *Sua Sponte* on Appeal. .........................30

CONCLUSION ......................................................................................32

CERTIFICATE OF COMPLIANCE..........................................................34

CERTIFICATE OF SERVICE................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Biden* v. *Nebraska*, 143 S.Ct. 2355 (2023) ...............................................25

*Buckley* v. *Valeo¸* 424 U.S. 1 (1976) ..........................................22, 24, 27

*Dynaquest Corp. v. USPS*, 242 F.3d 1070 (D.C. Cir. 2001) ...................32

*Free Enterprise Fund* v. *Public Company Accounting Oversight Board*, 561 U.S. 477 (2010) ...................................................................30

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ...............................................32

*Gregory* v. *Ashcroft*, 501 U.S. 452 (1991) ..............................................25

*In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019) ...........30

*Irons v. Diamond*, 670 F.2d 265 (D.C. Cir. 1981) ...................................31

*Lucia* v. *SEC*, 138 S.Ct. 2044 (2018).................................... 10, 19, 22, 26

*Maxwell v. Snow*, 409 F.3d 353 (D.C. Cir. 2005) ...................................31

*Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 891 F.3d 1041 (D.C. Cir. 2018)......................................................................................31

*PHH Corp. v. C.F.P.B.*, 881 F.3d 75 (D.C. Cir. 2018) ..............................1

*Seila Law LLC* v. *CFPB*, 140 S.Ct. 2183, 2227 (2020) ............7, 8, 28, 31

*United States* v. *Nixon*, 418 U.S. 683 (1974)......................................3, 21

*We the People Found., Inc. v. United States*, 485 F.3d 140 (D.C. Cir. 2007) ...................................................................................................1

## Statutes

18 U.S.C. 4041 ........................................................................................26

20 U.S.C. 3461 ........................................................................................25

28 U.S.C. 509 ...............................................................................3, 11, 12

28 U.S.C. 510 ...............................................................................3, 11, 12

28 U.S.C. 515 .................................................................3, 11, 13, 14, 15

28 U.S.C. 532 ..........................................................................................19

28 U.S.C. 533 ....................................................... 3, 11, 18, 19, 20, 21, 22

28 U.S.C. 534 ............................................................................... 19

28 U.S.C. 543 ....................................................................... 15, 16

28 USC 519 ................................................................. 11, 13, 15

42 U.S.C. 913 ............................................................................... 26

49 U.S.C. 323 ............................................................................... 26

5 U.S.C. 301 ......................................................................... 11, 12

5 U.S.C. 3101 ............................................................................. 10

7 U.S.C. 610 ............................................................................... 25

Ethics in Government Act of 1978, Pub. L. No. 95-521 ............. 10, 18, 21

## Other Authorities

2 THE RECORDS OF THE FEDERAL CONVENTION OF 1787 (MAX
FARRAND ED., 1911) ................................................................. 24

David E. Engdahl, *What's in a Name? The Constitutionality of
Multiple "Supreme" Courts,* 66 Ind. L.J. 457 (1991) ............................ 29

Gov't Mot. in Limine, *United States v. Trump*, No. 1:23-cr-257-
TSC (D.D.C.) ............................................................................... 28

## Regulations

28 C.F.R. 600.1 ........................................................................... 10

28 C.F.R. 600.3 ........................................................................... 10

Off. of the Att'y Gen., "Appointment of John L. Smith as Special
Counsel," Order No. 5559-2022 (Nov. 18, 2022) ............................ 3, 11

*Office of Special Counsel*, 64 Fed. Reg. 37,038-01 (July 9, 1999)
(codified at 28 C.F.R. 600.1–600.10) .................................................. 10

## Constitutional Provisions

U.S. Const. art. I, §8, cl. 18 ....................................................... 7

U.S. Const. art. II, §1, cl. 6 ....................................................... 20

U.S. Const. art. II, §2, cl. 2 ....................................................... 3, 4, 8, 10

U.S. Const., art. II, §2 ............................................................... 23

U.S. Const., art. II, §4 ............................................................... 20

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE[1]

Given their interest in the rule of law, the legal issue this brief addresses is particularly important to *amici*.  The Honorable Edwin Meese III served as the seventy-fifth Attorney General of the United States after having served as Counselor to the President, and is now the Ronald Reagan Distinguished Fellow Emeritus at the Heritage Foundation. During his tenure as Attorney General, the Department of Justice steadfastly defended proper limits on federal power.  Professors Calabresi and Lawson are scholars of the original public meaning of the Constitution. Members of this Court have cited their work. *See, e.g.*, *PHH Corp. v. C.F.P.B.*, 881 F.3d 75, 104 (D.C. Cir. 2018) (Pillard, J.) (citing Calabresi); *We the People Found., Inc. v. United States*, 485 F.3d 140, 144 (D.C. Cir. 2007) (Rogers, J., concurring) (citing Lawson).

*Amici* urge this court to vacate the district court's judgment and to order dismissal of Defendant's prosecution for failure of prosecutorial authority.

---

[1] All parties have consented to the filing of this brief. No party or counsel for a party authored this brief in whole or part, and no entity or person, other than *amici* and their counsel, have contributed funds for preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Jack Smith does not have authority to conduct the underlying prosecution. Those actions can be taken only by persons properly appointed as federal officers to properly created federal offices. Neither Smith nor the position of Special Counsel under which he purportedly acts meets those criteria. And that is a serious problem for the American rule of law—whatever one may think of the Defendant or the conduct at issue in the underlying prosecution.

The illegality addressed in this brief started on November 18, 2022, when Attorney General Merrick Garland exceeded his statutory and constitutional authority by purporting to appoint Smith to serve as Special Counsel for the Department of Justice (DOJ). Smith was appointed "to conduct the ongoing investigation into whether any person or entity [including former President Donald Trump] violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." Off. of the Att'y Gen., "Appointment of John L. Smith as Special Counsel," Order No. 5559-2022 (Nov. 18, 2022). Attorney General Garland cited as statutory

authority for this appointment 28 U.S.C. 509, 510, 515, and 533. But none of those statutes, nor any other statutory or constitutional provisions, remotely authorized the appointment by the Attorney General of a private citizen to receive extraordinary criminal law enforcement power under the title of Special Counsel.

First, the Appointments Clause requires that all federal offices "not otherwise provided for" in the Constitution must be "established by Law," U.S. Const. art. II, §2, cl. 2, and there is no statute establishing the Office of Special Counsel in DOJ. The statutory provisions relied upon by DOJ and lower courts for the appointment of Special Counsels over the past half century do not authorize the creation and appointment of Special Counsels at the level of United States Attorneys. And *United States* v. *Nixon*, 418 U.S. 683 (1974), does not hold to the contrary, because no question was ever raised in that case about the validity of the independent counsel's appointment. That case concerned the relationship between the President and DOJ as an institution, not between the President and any specific actor purportedly appointed by DOJ.

Second, even if one overlooks the absence of statutory authority for the position, there is no statute specifically authorizing the Attorney

General, rather than the President by and with the advice and consent of the Senate, to appoint such a Special Counsel. Under the Appointments Clause, inferior officers can be appointed by department heads only if Congress so directs by statute, see U.S. Const. art. II, §2, cl. 2, and so directs specifically enough to overcome a clear-statement presumption in favor of presidential appointment and senatorial confirmation. No such statute exists for the Special Counsel.

Third, the Special Counsel, if a valid officer, is a superior (or principal) rather than inferior officer, and thus cannot be appointed by any means other than presidential appointment and senatorial confirmation regardless of what any statutes purport to say. This is true as a matter of original meaning, and it is even true as a matter of case law once one understands that neither *Morrison* v. *Olson*, 487 U.S. 654 (1988), nor *Edmond* v. *United States*, 520 U.S. 651 (1997), can plausibly be read to say that any person who is in any fashion subordinate to another executive official other than the President is an "inferior" officer. Such a reading of those decisions leads to the ludicrous result that there is only one noninferior officer in every executive department.

To be sure, there are times when the appointment of a Special Counsel is appropriate. And statutes and the Constitution both provide ample means for such appointments by allowing the use of existing United States Attorneys. Any number of United States Attorneys have performed with distinction the function of serving as a Special Counsel. For example, on December 30, 2003, Patrick Fitzgerald, who was then the U.S. Attorney for the Northern District of Illinois, was lawfully appointed by the then-Acting Attorney General to investigate the Valerie Plame leak affair, which arose within the jurisdiction of the District of Columbia District Court. Mr. Fitzgerald, who was a Senate-confirmed officer of the United States, prosecuted and secured the conviction of Vice President Richard Cheney's Chief of Staff, Scooter Libby, in the U.S. District Court for the District of Columbia. Other recent examples involve the Senate-confirmed U.S. Attorneys Rod Rosenstein, John Huber, and John Durham. All of these investigations and prosecutions of high-level wrongdoing were lawful.

What federal statutes and the Constitution do not allow, however, is for the Attorney General to appoint a private citizen, who has never been confirmed by the Senate, as a substitute United States Attorney

under the title "Special Counsel." That is what happened on November 18, 2022. That appointment was unlawful, as are all the legal actions that have flowed from it, including citizen Smith's current prosecution of Defendant.

## ARGUMENT

### I.    No Statute Authorizes the Position of Special Counsel Supposedly Held by Smith.

In our constitutional system, Congress alone has the authority to create federal offices not established by the Constitution. And the Attorney General cannot ex nihilo fashion offices as he sees fit. Nor has Congress given the Attorney General power to appoint a Special Counsel of this nature. Thus, without legally holding any office, Smith cannot wield the authority of the United States, including his present attempt to prosecute Defendant.

#### A.    Only Congress Can Create a Federal Office.

The Constitution itself creates no executive positions other than the presidency (and the vice presidency, if one considers it an executive position). Instead, the Constitution commits the power to create federal offices to Congress under the Necessary and Proper Clause, which gives Congress power "[t]o make all Laws which shall be necessary and proper

6

for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, §8, cl. 18.

A law creating offices to carry out executive functions is the quintessential law "necessary and proper for carrying into Execution" federal powers. Moreover, "Congress has the *exclusive* constitutional power to create federal offices." Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87, 101 & n.74 (2019) (discussing 2 *The Records of the Federal Convention of 1787*, at 550 (Max Farrand ed., 1911)) ("*Mueller's Appointment*"); see also *Seila Law LLC* v. *CFPB*, 140 S.Ct. 2183, 2227 (2020) (Kagan, J., concurring in judgment with respect to severability and dissenting in part). English monarchs could create offices, but the Founders considered this power abusive and consciously denied it to the President. See Steven G. Calabresi & Gary Lawson, *The U.S. Constitution: Creation, Reconstruction, the Progressives, and the Modern Era* 382 (1st ed. 2020). Accordingly, the Constitution does not give the President or the heads of executive departments the power to create any offices and to appoint any officers they deem appropriate.

7

Instead, it requires that Congress first create *all* offices to which federal officers, superior or inferior, can be appointed.

This is confirmed by the Appointments Clause, which provides for the appointment of officers "which shall be *established by Law*." U.S. Const. art. II, §2, cl. 2 (emphasis added). The addition of the emphasized phrase in the Appointments Clause was deliberate. "On September 15, 1787, '[a]fter "Officers of the U.S. whose appointments are not otherwise provided for," were added the words "and which shall be established by law."'" Calabresi & Lawson, *Mueller's Appointment*, *supra*, at 101 & n.77 (quoting 2 *The Records of the Federal Convention of 1787*, at 628). This addition's plain import is that the "law" that establishes the office must be a statute; a regulation or executive (or judicial) order is not the kind of "law" that can create an office under the Appointments Clause. See *Seila Law*, 140 S.Ct. at 2227 (Kagan, J.) (quoting 1 Annals of Cong. 582 (1789) (Madison)). Indeed, the Constitution consistently uses the terms "law" and "laws," when otherwise unqualified, to mean statutes. See Gary Lawson & Christopher D. Moore, *The Executive Power of Constitutional Interpretation*, 81 Iowa L. Rev. 1267, 1315 (1996). If no statute establishes an office, there is no office to which someone can be appointed.

**B.** **The Organic Statutes of the Department of Justice Do Not "By Law" Vest in the Attorney General of the United States the Power to Appoint Officers with the Power of Supposed Special Counsel Smith.**

DOJ's current structure, as provided by statute, includes an Attorney General, Deputy Attorney General, Associate Attorney General, Solicitor General, eleven Assistant Attorneys General, one U.S. Attorney for each judicial district (currently ninety-four), a director of the Federal Bureau of Investigation, a director of the U.S. Marshals Service, one U.S. Marshal for each judicial district, a director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a director of the Bureau of Prisons, twenty-one U.S. Trustees, and as many assistant United States Attorneys and "special attorneys" as the Attorney General deems necessary.

This list does not include more than 100,000 people who work at DOJ. The vast majority of federal workers, including those who work at DOJ, are not "officers of the United States." They are employees, whose appointments are not controlled by the Appointments Clause and who therefore do not require specific statutory authorization. For their appointments, it suffices to provide, as Congress has done, that "[e]ach Executive agency, military department, and the government of the

District of Columbia may employ such number of *employees* of the various classes recognized by chapter 51 of this title as Congress may appropriate for from year to year." 5 U.S.C. 3101 (emphasis added). But officer positions must be specifically "established by Law." U.S. Const. art. II, §2, cl. 2. And employees cannot exercise the power of officers. See *Lucia* v. *SEC*, 138 S.Ct. 2044, 2051–2052 (2018).

To be sure, the Ethics in Government Act of 1978, Pub. L. No. 95-521, added to the mix an "independent counsel" appointed by a special three-judge court upon referral by the Attorney General. But the statutory provisions for the independent counsel expired in 1999 when Congress failed to reauthorize them.

Shortly before that expiration, then-Attorney General Janet Reno promulgated regulations—which, if valid, are still in force today—providing for an "Office of Special Counsel." See *Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. 600.1–600.10) [hereinafter "Reno Regulations"]. Under these regulations, the Attorney General may, in some circumstances, "appoint an *outside* Special Counsel to assume responsibility for the matter." 28 C.F.R. 600.1 (emphasis added). The regulations clarify that "outside" counsel means someone

"from outside the United States Government." *Id.* 600.3(a). The Reno Regulations, like the independent counsel statute, contemplate appointment, as a putative inferior officer, of a nongovernmental official to an office that is fully the equivalent of a United States Attorney. But regulations are not the kind of "law" that can "establish[]" a federal office. Only a statute can do that under the Appointments Clause, and no statute creates a Special Counsel with the jurisdiction and authority Smith wields.

The Reno Regulations cite as authority 5 U.S.C. 301 and 28 U.S.C. 509, 510, 515–519. In his order appointing Smith, Attorney General Garland cited "28 U.S.C. §§ 509, 510, 515, and 533." Order No. 5559-2022 at 1. These statutes, singly or collectively, plainly provide no such authority.

1.    Start with 5 U.S.C. 301. This provision is a general authorization for the issuance of regulations by the Attorney General or any other department head:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property ***.

11

This is merely a general housekeeping provision. Nothing in it creates any offices or authorizes the creation (or abolition) of any offices. Indeed, if §301 were taken as general authorization for appointment of officers, the entirety of the more numerous specific provisions for appointment of officers throughout the United States Code would be superfluous. That is an absurd construction of §301, and no one seriously advances it.

2.      Next, §509 of Title 28 merely says that "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General," except for some functions not relevant here. But this provision likewise does not authorize the creation of any office. It simply says that the Attorney General can control all his subordinates in DOJ or personally assume and exercise their responsibilities.

3.      Similarly, §510 merely says: "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." As with §509, the statute provides for shifting authority among the persons

12

who work at DOJ, but it says nothing about *who those persons are or how they got there*.

    4.    Attorney General Garland also cited 28 U.S.C. 515, and the Reno Regulations relied on 28 U.S.C. 515–519. Again, alone or singly, none of these provisions comes close to authorizing the creation of a Special Counsel or the appointment by the Attorney General of a private citizen to the position.

    First, §515(a) confers only the following power:

> The Attorney General *or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law*, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States Attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Thus, §515(a) does not create any offices or authorize their creation. Instead, it concerns the powers of people who have been properly appointed to offices "under law" pursuant to *other statutory provisions*, and it allows the Attorney General to designate a U.S. Attorney or a special attorney appointed "under law" to prosecute a case "whether or not he is a resident of the district in which the proceeding is brought." *Ibid*.

13

Section 515(a) is thus a geographical and jurisdictional allocative provision, not a grant of power to appoint private citizens as Special Counsels. For example, in 2003, this clause allowed the Attorney General to appoint Patrick Fitzgerald, the Senate-confirmed U.S. Attorney for the Northern District of Illinois, to take on Special Counsel duties to investigate the Valerie Plame affair, which arose in the District of Columbia. Section 515(a) permits this geographical flexibility.

Second, §515 adds in subsection (b):

> Each Attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney.

Again, this subsection is not a grant of a new power to retain or to hire new officers, but instead provides on its face that attorneys *who have already been hired or retained*, and who may be only employees, not officers, can also have a title and salary.

To be sure, §§515(a) and 515(b) both assume that there are going to be attorneys "specially appointed by the Attorney General under law" and "specially retained under the authority of the Department of

Justice." And indeed, an explicit provision elsewhere in Title 28, §543 (discussed below), authorizes the Attorney General to hire such persons, who can then be denominated and commissioned as "special assistant[s]" or "special attorney[s]" under §515(b). But these provisions confer no authority to create offices.

Likewise, §§516–519 concern the internal allocation of authority among existing DOJ personnel and provide no authority to create offices. Section 519, for example, provides:

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States Attorneys, assistant United States Attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

There is no office-creating power here, either.

5. Section 519, however, points to the correct answer regarding the Attorney General's statutory authority to appoint Special Counsels. Section 519 notes that there are "special attorneys appointed under section 543 of this title." Indeed, there are. Section 543 of Title 28 is *explicit* authority for the Attorney General to appoint Special Counsels. Yet neither the Reno Regulations nor the Garland memo appointing Smith makes any mention of this provision. Why not? Because §543 does

not authorize *the kind of Special Counsel contemplated by the Reno Regulations or the Garland appointment of Smith*. Section 543 is narrowly cabined, as one would expect from the overall structure of Title 28. The government for decades has steadfastly refused to rely on this provision that explicitly provides the Attorney General with hiring authority, and it continues to refuse to rely on it in current litigation—for the obvious reason that the provision contains internal limitations which the government seeks to avoid.

This is clear from the text of §543, which provides:

(a) The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country.

(b) Each attorney appointed under this section is subject to removal by the Attorney General.

This is an obvious and explicit authorization for the creation and appointment of "special assistants" or "special counsels" who merely *assist* U.S. Attorneys when the public interest so requires.

There are, moreover, many contexts in which the appointment of such persons makes sense. The government often encounters problems for which private lawyers have expertise—either gained from past

16

government service or private experience—on matters such as organized crime, banking, antitrust, tribal law, and so forth. Those lawyers may not want a permanent government position but may be willing to help the government on a limited basis, perhaps as part of a task force or a team dealing with a specific piece of complex litigation requiring expert knowledge. An appointment as a special assistant or special counsel, under the control and direction of a United States Attorney, is an obvious win-win in such instances.

The problem for the government in the case of the Reno Regulations and the Smith appointment is that those Regulations and the Smith appointment order do not contemplate "special counsels" who *assist* U.S. Attorneys.  Instead, they contemplate Special Counsels who *replace* U.S. Attorneys in specific cases. Smith, for example, was not appointed to assist U.S. Attorneys. He was hired as a powerful standalone officer who replaces rather than assists the functions of United States Attorneys within the scope of his jurisdiction. This is precisely the role that the Ethics in Government Act authorized for independent counsels. But that statute no longer exists, and in the absence of that statute or a similar

one, there is simply no statutory office of Special Counsel to which Smith could be appointed to function as a stand-in for a U.S. Attorney.

6.    The remainder of Title 28 confirms this conclusion. Section 533, relied upon by Attorney General Garland, is part of a chapter dealing with the FBI and is entitled "Investigative and Other Officials." It says:

> The Attorney General may appoint officials-(1) to detect and prosecute crimes against the United States; (2) to assist in the protection of the person of the President; and (3) to assist in the protection of the person of the Attorney General[;] (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.

But §533(1) is not a general authorization to the Attorney General to appoint officers. It specifically and solely authorizes the appointment of "Investigative and Other *Officials*"—officials, not officers—connected with the FBI. This does not include Special Counsels. This is clear for three reasons.

First, §533 is part of Chapter 33 of Title 28, encompassing §§531–540D, which deals with the "Federal Bureau of Investigation." Section 532, immediately preceding §533, is entitled "Director of the Federal Bureau of Investigation," and spells out the Attorney General's authority

18

over the FBI. Section 534, immediately following §533, concerns preserving evidence in criminal cases.

Section 533 thus clearly deals with FBI officials and agents, not Special Counsels. This is how the government has long understood this provision, which has been employed as the basis for the FBI's law enforcement authority.

Second, §533 concerns the appointment of investigative and prosecutorial "officials." Such officials, as that term is used in the statute,[2] are not Article II "officers of the United States" and cannot perform the functions of officers of the United States. They are nonofficer employees, who, as FBI agents, must be subject to the supervision and direction of officers of the United States. The FBI needs office and field personnel to perform its functions, and §533 allows the agency to have them. But those office and field personnel are not officers of the United States and do not have the range and power of a Special Counsel.

---

[2] An eighteenth-century statute might have used a term such as "officials" to have a broader meaning than applies to §533. See *Lucia*, 138 S.Ct. at 2056–2057 (Thomas, J., concurring). As a matter of statutory interpretation, however, there is no plausible case for reading the term as it appears in §533 to be coextensive with the constitutional meaning of "officer."

To the contrary, the word "Officer" is a constitutional term of art, not only because it is used that way in the Appointments Clause, but also because Article II, Section 4 allows for the impeachment and removal from office of "all civil Officers of the United States[.]" Congress can try to impeach the Deputy Attorney General or the FBI Director, but no one thinks Congress can impeach DOJ trial attorneys, Office of Legal Counsel attorney-advisers, or field personnel at the FBI. What is more, officers can be put by Congress in the line of succession to the presidency. See U.S. Const. art. II, §1, cl. 6. But no one thinks investigative officials at the FBI or DOJ trial attorneys, who are bureaucrats and employees, can be put in the line of succession to the presidency. That simply is not how Congress was using the term "officials" in §533.

Third, and perhaps most tellingly, a cavalier reading of §533 to authorize hiring beyond its obvious scope obliterates the careful structure of Title 28. That Title is divided into chapters dealing with the Attorney General; the FBI; U.S. Attorneys; the Marshals Service; U.S. Trustees; the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the now-sunsetted independent counsel. Wide-ranging Special Counsels

of the sort represented by Smith are not part of these provisions outside of the now-defunct Ethics in Government Act sections.

7.     At a more granular level, the effect of a loose reading of the statutes is even more bizarre. Congress, as noted earlier, has provided for the appointment, all with presidential nomination and senatorial consent, of a Deputy Attorney General, an Associate Attorney General, a Solicitor General, exactly eleven Assistant Attorneys General (plus an Assistant Attorney General for Administration who is in the competitive service and is appointed by the Attorney General), and exactly one U.S. Attorney for each judicial district, of which there are currently ninety-four. A reading of §533 to create essentially unlimited inferior officer appointment power in the Attorney General wreaks havoc on this structure. It would allow the Attorney General to appoint an entire shadow DOJ to replace the functions of every statutorily specified officer. No wonder the Reno Regulations did not invoke it.

For reasons described in depth in Calabresi & Lawson, *Mueller's Appointment*, *supra*, the Supreme Court in *United States* v. *Nixon*, 418 U.S. 683 (1974), did not pass on the scope of §533.  That decision contains some ill-considered dictum regarding §533, see *Nixon*, 418 U.S. at 694–

21

695, but it merits no weight. Anyone tempted to rely on *Nixon* should read the case briefs to see what issues were truly raised there. Those issues involved only the relationship between the President and DOJ as an institution; the same arguments would have been raised if the Attorney General personally, rather than the independent counsel, had brought the suit at issue there. See Calabresi & Lawson, *Mueller's Appointment*, *supra,* at 120–123. Moreover, *Nixon* was argued and decided before the modern rebirth of separation of powers, which dates from two years after *Nixon* in *Buckley* v. *Valeo¸* 424 U.S. 1 (1976) (per curiam).

In short, the position supposedly held by Smith was not "established by Law." The authority exercised by him as a so-called "Special Counsel" far exceeds the power exercisable by a mere employee. See *Lucia*, 138 S.Ct. at 2051–2052. He is acting as an officer, but aside from the specific offices listed in the statutes discussed above, there is no office for him to hold. That alone robs him of authority to represent the United States in any capacity, including before this Court.

## II.    The Appointments Clause Establishes a Default Rule that All Heads of Departments, Principal Officers, and Superior Officers Require Presidential Nomination, Senate Confirmation, and then Presidential Appointment.

Even if one somehow thinks that existing statutes authorize appointment of stand-alone Special Counsels with the full power of a U.S. Attorney, Smith was not properly appointed to such an "office." No statute *clearly* authorized his appointment by any mode other than presidential appointment and Senate confirmation.

Any such statute, of course, is governed by the Appointments Clause of Article II, Section 2, which provides that the President "shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

This sentence makes three things clear.  First, the default mode of appointment for all officers, whether superior or inferior, is presidential nomination, Senate confirmation, and then presidential appointment. Second, this default presumption can only be overridden by Congress in

the case of inferior officers. Third, even in case of inferior officers, Congress must speak *clearly* to authorize a permissible mode of appointment for those officers other than presidential nomination, Senate confirmation, and presidential appointment.

This latter "clear statement" rule is implicit in the Appointments Clause and the constitutional structure. That Clause is both a separation of powers and a federalism provision. It divides appointment power between the President and the Senate—not between the President and Congress as a whole—which lacks power to confirm appointees. See *Buckley,* 424 U.S. at 127. The Senate is the body in which States receives equal representation, whatever their size or population, which guards against large-state Presidents underrepresenting smaller states in the executive and judicial departments. As one Convention participant put it, presidential appointment power without the check of the Senate would allow presidents "to gain over the larger States, by gratifying them with a preference of their Citizens." 2 *Records of the Federal Convention* at 43 (Mr. Bedford). These structural concerns warrant an interpretative presumption in favor of a clear statement of congressional intent to authorize appointment of an inferior officer by any means other than

24

presidential nomination and senatorial confirmation. Cf. *Biden* v. *Nebraska*, 143 S.Ct. 2355, 2372–2375 (2023) (invoking the major questions doctrine because "the Executive seiz[ed] the power of the Legislature"); *Gregory* v. *Ashcroft,* 501 U.S. 452, 460–461 (1991) (articulating federalism clear statement rule).

Even without such a presumption, ordinary statutory interpretation demonstrates that the Attorney General received no power to appoint Special Counsels as inferior officers. None of the statutes canvassed in the previous section contains any such authorization. In contrast to the DOJ's organic statute, the organic statutes of the Agriculture, Education, Health and Human Services, and Transportation Departments *do contain inferior officer appointment power clauses*. Thus, the Agriculture Secretary "may appoint such officers and employees *** and such experts, as are necessary to execute the functions vested in him[,]" 7 U.S.C. 610(a); the Education Secretary similarly "is authorized to appoint *** such officers and employees, including attorneys, as may be necessary to carry out the functions of the Secretary and the Department[,]" 20 U.S.C. 3461; the Health and Human Services Secretary "is authorized to appoint *** officers and employees,"

25

42 U.S.C. 913; and the Transportation Secretary "may appoint ***
officers and employees of the Department of Transportation ***." 49
U.S.C. 323(a).   And Congress gave the Attorney General power to
"appoint such additional officers and employees as he deems necessary[,]"
18 U.S.C. 4041—but *specifically for the Bureau of Prisons*, not more
broadly for other DOJ components.

It is unclear why Congress chose to give general inferior officer
appointment power to the aforementioned Secretaries but not the
Attorney General.   It may be because of the unique threat that an
unprincipled Attorney General could pose to civil liberties, the separation
of powers, and federalism. But this Court need not divine Congress's
reasons for making different policy choices because the relevant statutes
are unambiguous.

## III.   Even If Special Counsels Were Statutorily Authorized, They Would Be Superior Officers Who Would Need Presidential Nomination and Senate Confirmation.

If Smith actually had the power to convene grand juries, issue
subpoenas, direct and conduct prosecutions, and file appeals in this Court
(let alone the Supreme Court), he would obviously be an "Officer of the
United States" rather than a mere employee.   See *Lucia*, 138 S.Ct. at

2051–2052; *Buckley*, 424 U.S. at 139–140; Calabresi & Lawson, *Mueller's Appointment*, *supra*, at 128–134.  More than that, he would be a *superior* (or principal) officer. And by the plain terms of the Appointments Clause, superior officers *must* be appointed by the President with the Senate's advice and consent. That is not how Smith was appointed, and he thus could not serve as Special Counsel even if such a position validly existed.

The Special Counsels contemplated by the Reno Regulations are the equivalent of, if not more powerful than, U.S. Attorneys.  It is obvious as an original matter that U.S. Attorneys are superior officers, see Calabresi & Lawson, *Mueller's Appointment*, *supra*, at 138–142, and the same is true of the Special Counsels who mirror them.  The only plausible argument to the contrary rests not on original meaning but on a wild overreading of the Supreme Court's decisions in *Morrison* v. *Olson,* 487 U.S. 654 (1988), and *Edmond* v. *United States,* 520 U.S. 651 (1997). Those decisions, especially *Edmond,* contain language that some lower courts have read to mean that anyone who had a superior on an agency organization chart must be an "inferior" officer. But if that were true, the Solicitor General, the Associate Attorney General, all the Assistant Attorneys General, all U.S. Attorneys, and even the Deputy Attorney

General, would be inferior officers, because they all answer at some level to the Attorney General. Likewise, judges of the federal courts of appeals and district courts would be inferior officers because they can be overruled by the Supreme Court. Could Congress therefore let the Attorney General appoint court of appeals judges or the Solicitor General or FBI Director? Of course not.

One can be a superior rather than inferior officer in two ways. One is to have no decisional superior other than the President. Smith's court filings insist that he is independent from his nominal superior (the Attorney General), and even the President, assuring the courts that "coordination with the Biden Administration"—which includes Attorney General Garland and President Biden—is "non-existent." Gov't Mot. in Limine at 6, *United States v. Trump*, No. 1:23-cr-257-TSC (D.D.C.). Smith thus has no functional superior, necessarily rendering him a superior officer. And this lack of accountability only compounds the invalidity of his purported appointment. See *Seila Law*, 140 S.Ct. at 2197–2199.

The other way to be a superior officer is to have so much power and authority that one is superior in a substantive sense. For example, in the

late eighteenth century, a court whose decisions were not subject to review by any other court could nonetheless sometimes be called an "inferior" court if its jurisdiction or geographic scope was not as extensive as those of other courts. See David E. Engdahl, *What's in a Name? The Constitutionality of Multiple "Supreme" Courts,* 66 Ind. L.J. 457, 466–472 (1991). That is why an early draft of Article III at the Constitutional Convention proposed creating "one or more supreme tribunals." *Id.* at 464. "Inferior" does not *exclusively* mean "subject to control, direction, and review." It means that much, but it can also mean more in certain contexts.

As Justice Souter perceptively wrote in his *Edmond* concurrence: "Because the term 'inferior officer' implies an official superior, one who has no superior is not an inferior officer ***. It does not follow, however, that if one is subject to some supervision and control, one is an inferior officer. Having a superior officer is necessary for inferior officer status, but not sufficient to establish it." 520 U.S. at 667 (Souter, J., concurring in part and concurring in the judgment).

Either way, if he is an officer, Smith is a superior officer. He has no superior supervising or directing him as required by *Edmond* or *Free*

29

*Enterprise Fund* v. *Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). Attorney General Garland does not supervise or direct him, as he said he would not when Smith was appointed Special Counsel.

And Smith is appearing in this Court on behalf of the United States. He is prosecuting a former President, the first time that has happened in our Nation's history. Smith is purporting to exercise at least as much power as a U.S. Attorney, and arguably more. That is the hallmark of a superior officer, who must be appointed as such.

The absence of such an appointment means that Smith lacks authority to prosecute Defendant on behalf of the United States. And that is a powerful, sufficient reason to vacate the decision below and order that Smith's prosecution of Defendant be dismissed.

## IV. This Panel is Not Bound by Contrary Circuit Precedent because *Seila Law* is Supervening Authority, and This Issue May be Reached *Sua Sponte* on Appeal.

On the issue of Smith's authority, moreover, this panel is not bound by *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019), which held that private citizens can be appointed as Special Counsels consistent with the Appointments Clause. *Id.* at 1052–1054. Following that decision, the Supreme Court further explained the Appointments

30

Clause's requirements, including an observation that restrictions on the removability of appointed officers have been upheld only under two narrow exceptions, not relevant here. See *Seila Law*, 140 S.Ct. at 2199–2202. Moreover, *Seila Law* expounded the problems with the Constitution's separation of powers entailed by the CFPB Director. See *id.* at 2202–07. Like the Director there, the Framers' determination to "divide power everywhere except for the Presidency," *id.* at 2203, renders the Special Counsel's purported "insulation from removal \*\*\* unconstitutional," *id.* at 2204.

Thus, *Seila Law* constitutes supervening authority between *Grand Jury* and now. The law-of-the-circuit doctrine does not require continued adherence to a panel decision inconsistent with subsequent Supreme Court precedent. *See Maxwell v. Snow*, 409 F.3d 353, 358 (D.C. Cir. 2005). At minimum, this issue warrants polling the full Court as a substitute for an *en banc* determination. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981) (explaining this procedure); *Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 891 F.3d 1041, 1052 n.\* (D.C. Cir. 2018) (following this procedure).

Furthermore, this Court may reach this issue now. That is because the Supreme Court has "expressly included Appointments Clause objections *** in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Freytag v. Comm'r*, 501 U.S. 868, 878–879 (1991) (collecting cases). See also *Dynaquest Corp. v. USPS*, 242 F.3d 1070, 1076 (D.C. Cir. 2001) ("[C]ourts have discretion to consider Appointments Clause challenges raised for the first time on appeal."). Judicial economy also points towards this Court deciding the Appointments Clause issue now, as otherwise Defendant will simply raise it before the District Court if the case is remanded and this Court will face the issue again on appeal. This panel is accordingly free to invalidate Smith's appointment, and should do so.

## CONCLUSION

Not properly clothed in the authority of the federal government, Smith is a modern example of the naked emperor. Illegally appointed, he has no more authority to represent the United States in this Court, or in the underlying prosecution, than Tom Brady, Warren Buffett, or Beyoncé. That fact is sufficient to sink Smith's prosecution of Defendant,

and the Court should vacate the decision below and order that the prosecution be dismissed. We express no views on the substantive issues addressed in the parties' briefs.

Respectfully submitted,

/s/ Gene C. Schaerr
GENE C. SCHAERR
 Counsel of Record
JUSTIN A. MILLER*
AARON C. WARD*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

Counsel for Amici Curiae
Former Attorney General Edwin Meese
III and law professors Steven G.
Calabresi and Gary S. Lawson

* Not yet admitted in D.C. Practicing
under the supervision of D.C. bar
members.

Date: December 30, 2023

## CERTIFICATE OF COMPLIANCE

I certify, on this 30th day of December 2023, that the foregoing Brief for *Amici Curiae* complies with the word limit under Fed. R. App. P. 29(a)(5) and this Court's briefing order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,497 words. The number of words was determined through the word-count function of Microsoft Word. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Gene C. Schaerr*
GENE C. SCHAERR

## CERTIFICATE OF SERVICE

I certify that on December 30, 2023, I caused the foregoing Brief for *Amici Curiae* to be filed with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Gene C. Schaerr*
GENE C. SCHAERR